Miller Appeal.

Submitted September 8, 1975. Before WATKINS, P.J., JACOBS, HOFFMAN, CERCONE, PRICE, VAN DER VOORT, and SPAETH, JJ.

434

*Calvin S. Drayer, Jr.,* Assistant Public Defender, for appellant.

*Stewart J. Greenleaf,* Assistant District Attorney, *William T. Nicholas,* First Assistant District Attorney, and *Milton O. Moss,* District Attorney, for appellee.

OPINION BY PRICE, J., December 1, 1975:

On December 26, 1974, appellant, Craig Miller, was adjudicated a delinquent and in violation of his probation as the result of his participation in an armed robbery of a gasoline station. The only issue raised on this appeal is whether the lower court erred in refusing to suppress the appellant's confession.[1]

Testimony at the adjudication hearing established that at approximately noon on November 25, 1974, Craig Miller and two other boys, Anthony Towson and Douglas Tucker, walked into the Pottstown Police Department and informed the desk attendant that they had heard they were wanted as suspects in a robbery. Towson was taken to the Detectives' Room, informed of his constitu-

---

1. Appellant also raises the question of whether, assuming that the statement was obtained in violation of his constitutional rights, it was improperly used as evidence of his probation violation. In view of our disposition of the first issue, we need not consider the second.

tional rights, and questioned about the armed robbery of Bart's Sunoco Station on November 14, 1974. Towson admitted that he had acted as a "lookout," and stated that Craig Miller had committed the robbery by pointing a gun at the attendant, demanding money, and walking away with about $300. Towson later signed a three-page statement to the same effect.

Craig Miller was then interviewed by police detectives. Although Miller denied that he was informed of his rights prior to any questioning, two detectives and a police secretary testified that he had been so advised. During the course of the interview, appellant orally admitted his participation in the robbery. Following his statement, appellant was placed in a cell while the police contacted a juvenile probation officer at Montgomery Hall concerning placement. The detective also attempted to contact appellant's parents, and after several efforts failed, finally located appellant's father at work.[2] He was returned to the detectives' office, where he reiterated his earlier statement. On this occasion, the confession was typed by the secretary and signed by Miller.[3]

At the hearing, both Miller and Towson denied that they had robbed the service station, and testified that they signed the confessions because they wanted to stay out of jail.[4] A motion to suppress the confession on the basis of coercion was denied by the lower court judge, who specifically credited the testimony of the police and discredited that of appellant and Towson.

---

2. His father did not arrive at the station until after appellant signed the statement.

3. Appellant contended that he had signed on only one page of the two-page statement. Testimony by the policemen and the document itself, which was signed on both pages, refuted this argument and were credited by the fact-finder.

4. This testimony is completely untenable, especially in view of appellant's admission to the lower court that he knows that armed robbers go to jail. See NT 59.

Appellant now contends that the lower court erred in refusing to suppress the statement because he had not been afforded the opportunity to consult with his parents or an attorney at the police station. We find no error in the instant case.

It is well established that the Commonwealth has the burden of proving by a preponderance of the evidence that an accused's confession was the product of a knowing and intelligent waiver of his constitutional rights. *Commonwealth v. Goodwin,* 460 Pa. 516, 333 A.2d 892 (1975) ; *Commonwealth v. Ewell,* 456 Pa. 589, 319 A.2d 153 (1974); *Commonwealth v. Fogan,* 449 Pa. 552, 296 A.2d 755 (1972). Where the accused is a person of tender years, the attending circumstances must be scrutinized with special care before an intelligent and knowing waiver is declared. *Commonwealth v. Fogan, supra; Commonwealth v. Porter,* 449 Pa. 153, 295 A.2d 311 (1972).

Recently, the Pennsylvania Supreme Court stated: "Specifics such as age, intelligence, mental and physical development of the minor suspect are relevant factors in a determination as to whether or not the admissions were the product of a free and unfettered will and made only after a full appreciation of the rights that protect him." *Commonwealth v. Starkes,* 461 Pa. 178, 185, 335 A.2d 698, 701 (1975).

Another factor in the totality of the circumstances was discussed in *Commonwealth v. Roane,* 459 Pa. 389, 394, 329 A.2d 286, 288 (1974), wherein the Supreme Court stated: "An important factor in establishing that a juvenile's waiver of his constitutional rights was a knowing and intelligent one would be evidence that, before he made his decision to waive those rights, he had access to the advice of a parent, attorney, or other adult who was primarily interested in his welfare."

Applying the criteria suggested by the court in *Starkes* and *Roane,* we find that the appellant voluntarily, knowingly and intelligently offered his confession. Ap-

pellant was seventeen years of age at the time of his arrest, and had completed nine years of formal education. He is a person of average intelligence. This was not his first contact with the police. In fact, appellant had been through the entire procedure involved in this case, including detention and placement, on other occasions. Moreover, he voluntarily surrendered himself to the police after he had learned that he was a suspect. These factors, coupled with the sworn testimony of three reputable witnesses that appellant had been advised of his rights before confessing, lead us to conclude that the lack of parental consultation in this case requires no reversal.[5]

The order of the lower court is affirmed.

SPAETH, J., concurs in the result.

---

5. This case is distinguishable from *Starkes* and *Roane*, wherein the parents of the accused either requested time to speak with the child or advised the minor without knowing his rights. It is also distinguishable from the recently filed case of *Commonwealth v. Webster*, 464 Pa. ——, 353 A.2d 372 (1975). In *Webster*, the supreme court stated: "It is clear from these cases that not only may the Commonwealth not interfere with the right of a minor suspect to consult with a parent or guardian throughout the interrogation process, more importantly, police officials must make a reasonable effort to provide an opportunity for the youthful accused to confer with and receive the benefit of counsel or an interested and informed adult guidance before permitting him to elect to waive these important constitutional rights." 464 Pa. at ——, 353 A.2d at 378. On the facts of *Webster*, the court concluded that the police had not done all that was required of them when they failed to advise Darryl's mother of his constitutional rights before she spoke with her son. In the instant case, the police were unable to contact appellant's parents until after he had signed his statement. Moreover, as stated in the body of this opinion, appellant voluntarily surrendered himself to the police. These factors and his history of prior involvement with the police place the instant case on a different footing than the recent decisions of the supreme court. *See also* note 5 of the *Webster* opinion.