## Commonwealth v. Snelling

*Charles Cunningham*, for Commonwealth.
*Neil Jokelson*, for defendant.

CHALFIN, *J.*, June 30, 1976—This motion to suppress a statement by a juvenile raises important questions concerning the interpretation of the Juvenile Act of December 6, 1972, P.L. 1464, sec. 13, 11 P.S. §50-310. This act would appear to prohibit almost any interrogation of a juvenile in custody at a police station concerning the facts of the alleged offense.

Defendant is 17 years of age and was certified to this court for trial on charges of rape, burglary, conspiracy and other charges. He was arrested at his home on October 24, 1975, at approximately 12:30 p.m. He was indentified by complainant at that time, and taken to the Central Detective District. His mother, who was present at defendant's arrest, declined to accompany the police and her son to the station house. One officer testified that she appeared to be drunk at the time. She was not

informed of the police intent to question her son. No effort was made to locate defendant's father, or other "interested adult" or to provide counsel.

At the station house defendant was warned of his Miranda rights, and interrogated until 2:30 p.m., when he gave a statement to the police. A detective tried to read the statement to defendant's mother over the telephone, but she refused to listen to the whole statement. Defendant was taken to a juvenile detention facility at some later time.

Defendant now moves to suppress this statement as having been obtained in violation of the Juvenile Act. Section 13(a) of the act, 11 P.S. §50-310(a), states in part: "(a) A person taking a child into custody, with all reasonable speed and without first taking the child elsewhere, shall . . . (3) Bring the child before the court or deliver him to a detention or shelter care facility designated by the court . . ."

Section 21(b), 11 P.S. §50-318(b), further provides that "an extrajudicial statement, if obtained in the course of violation of this act . . . shall not be used against him."

These provisions have been rarely subjected to judicial interpretation. In its sole statement on this section the Superior Court held that children may be taken to a station house for interrogation rather than directly to a detention facility when the attendant delay is not unreasonable: Anderson Appeal, 227 Pa. Superior Ct. 439, 313 A. 2d 260 (1973). The juvenile defendant in that case had been involved in a gang shooting with several adults, who were to be brought to the police district upon arrest. On these particular facts, the court found that "in this case, the police had a legitimate reason in detaining the defendant in the station house so that the defendant might identify other perpetrators of

this crime when they were brought in." 227 Pa. Superior Ct. at 442.

In the present case, there existed no similar legitimate reason for bringing defendant to Central Detective Division rather than to a juvenile detention facility. The only apparent purpose for bringing defendant to the detective division and questioning him was to obtain a statement of the facts of the alleged offense. Under the act this is not a legitimate reason for defendant's detention at the station house. The drafters of the act did not believe that the language of this section authorized any police questioning beyond that necessary for identification, location of parents, or medical treatment.*

Further, the language of the act, that the child be taken before the court or to a detention facility "without first taking the child elsewhere" does not seem to admit exceptions. The Superior Court did not consider this second requirement of the act. The only issue addressed in Anderson was "whether a two-hour delay between the time of arrest and the arrival at the detention center was an unreasonable delay." 227 Pa. Superior Ct. at 442. But the act contains two separate conditions, both of which must be met before a statement by a juvenile can be admitted.

In this case, defendant was first taken to the Central Detective Division. It is clear that the detective division is not a "detention or shelter care facility designated by the court." Section 13(a)(3), 11 P.S.

---

*See General Assembly of the Commonwealth of Pennsylvania Joint State Government Commission Proposed Juvenile Act, §13, Comment (1970), described in Packel, A Guide to Pennsylvania Delinquency Law, 21 Villanova L. Rev. 1, 32n. 186 (1975-76).

§50-310(a)(3). The detective district would probably be better classified as a "jail or other facility for the detention of adult offenders or persons charged with crime." (section 14(b), 11 P.S. §50-311(b)), where a juvenile may not be detained until his or her case is transferred for criminal prosecution: section 14(c), 11 P.S. §50-311(c).

We therefore find that both requirements of section 13(a) of the Juvenile Act, 11 P.S. §50-310(a), were violated, and grant defendant's motion to suppress his statement.

We recognize that these provisions of the act are rarely adhered to, and that full compliance would put a heavy burden on the juvenile justice system in this city. However, the wording of the act is clear and absolute, and we are constrained to follow the mandates of the General Assembly, as they appear to us, until such time as the appellate courts can provide further guidance.

We also note that the Commonwealth's testimony failed to establish that the police made "a reasonable effort to provide an opportunity for the youthful accused to confer with and receive the benefit of counsel or an interested and informed adult guidance before permitting him to elect to waive these important constitutional rights." Com. v. Webster, 466 Pa. 314, 326, 353 A. 2d 372, 378 (1976).

The Supreme Court has been developing a strict standand for admissibility of confessions by juveniles taken without the benefit of counsel or the guidance of an informed parent or interested adult. In Com. v. Roane, 459 Pa. 389, 329 A. 2d 286 (1974), the court found that the mere presence of a 16-year-old defendant's mother at his interrogation was insufficient to support his waiver of rights, without an opportunity for the mother and son to

confer alone concerning his situation. The next year the court required that where a parent is present, the parent must be advised of the rights possessed by the juvenile suspect, before the parent may be permitted to influence the juvenile's decision: Com. v. Starkes, 461 Pa. 178, 335 A. 2d 698 (1975). This rule was extended in Com. v. McCutchen, 463 Pa. 90, 343 A. 2d 659 (1975), to require a 15-year-old suspect be given an opportunity to consult with his mother not only before a formal confession is taken, but before making any oral incriminatory statements.

Applying the standards of these cases to the facts before us, we find that this defendant waived his rights without an opportunity to receive informed and interested guidance. Although his mother was present at his arrest, she was neither informed of police intentions to interrogate defendant, nor defendant's rights to refuse to make incriminating statements. Further, her apparent intoxication may have negated her ability to counsel defendant. The police made no effort to locate defendant's father or another interested adult, or to obtain legal counsel for defendant. In short, none of the protections required by the Supreme Court were afforded Snelling.

For these reasons we grant defendant's motion to suppress his statement.