368 A.2d 690

**COMMONWEALTH of Pennsylvania**

v.

**Frank LEE, Appellant (two cases).**

Supreme Court of Pennsylvania.

Argued April 2, 1976.

Decided Jan. 28, 1977.

402

Edward K. Nichols, Jr., Philadelphia, for appellant.

F. Emmett Fitzpatrick, Dist. Atty., Steven H. Goldblatt, Asst. Dist. Atty., Chief, Appeals Div., Abraham Gafni, Philadelphia, for appellee.

Before JONES, C. J., and EAGEN, O'BRIEN, ROBERTS, POMEROY, NIX, and MANDERINO, JJ.

## OPINION

O'BRIEN, Justice.

Appellant, Frank Lee, was tried by a judge and jury and found guilty of murder in the first degree, aggravat-

ed robbery, burglary and conspiracy. Post-trial motions were denied and appellant was sentenced to a term of life imprisonment at a state correctional institution on the murder conviction. He was also sentenced to concurrent prison terms of ten to twenty years (aggravated robbery), ten to twenty years (burglary) and one to two years (conspiracy). The convictions arise from the May 6, 1970, beating death of Isadore Selez.

Appellant filed a direct appeal to this court on the murder conviction. He appealed the other convictions to the Superior Court, which on June 10, 1975, certified those appeals to this court.

## I.

Appellant argues that the court erred in failing to suppress a confession, as he was not allowed to consult with his parents before waiving his *Miranda* rights. We agree.

The facts surrounding this appeal are as follows. Appellant was a fifteen-year-old juvenile at the time of his arrest. He was arrested at his home on May 8, 1970, at 2 :00 a. m. Appellant arrived at the Police Administration Building at 2:07 a. m. At 2 :25 a. m., prior to any questioning by police, appellant was given his *Miranda* warnings. He "waived" his constitutional rights, and admitted involvement in the robbery-slaying of Selez. His statement was reduced to writing by 3:23 a. m. At this point, the police called appellant's parents, who were taken by the police to see their son. The parents arrived at 3:53 a. m., and were told that appellant had been given his *Miranda* warnings. Appellant was allowed to talk to his parents alone and at 4:45 a. m. told police he wished to give a formal statement. The formal statement, which did not vary in substance from the original confession, was completed at 8 :20 a. m.

In *Commonwealth v. Chaney,* 465 Pa. 407, 350 A.2d 829 (1975), this court stated:

". . . absent a showing that a juvenile had an opportunity to consult with an interested and informed parent or adult or counsel before he waived his Miranda rights, his waiver will be ineffectual."

In the instant case, appellant was not allowed to consult with his parents until after he had given his original confession. Under our decisions concerning juvenile confessions, appellant's waiver of his constitutional rights was ineffective and the confession must be suppressed. See *Commonwealth v. Roane,* 459 Pa. 389, 329 A.2d 286 (1974); *Commonwealth v. Starkes,* 461 Pa. 178, 335 A.2d 698 (1975); *Commonwealth v. McCutchen,* 463 Pa. 90, 343 A.2d 669 (1975).

## II.

The Commonwealth argues that appellant should not be entitled to the benefit of the *McCutchen* decision because appellant's arrest, confession and trial occurred prior to that decision. We do not agree. In *Commonwealth v. Chaney,* 465 Pa. 407, 350 A.2d 829 (1975), this court held that any person whose case is on direct appeal is entitled to the benefit of the *McCutchen* decision. Under the rule announced in *Chaney,* appellant is entitled to the juvenile confession decisions as his case is before us on direct appeal.

*Chaney* is based on the theory that a judgment is not final until the availability of appeal has been exhausted, and any judicial changes in the law are applicable to a case prior to final judgment. *Linkletter v. Walker,* 381 U.S. 618, 85 S.Ct. 1731, 14 L.Ed.2d 601 (1965), *Commonwealth v. Little,* 432 Pa. 256, 248 A.2d 32 (1968). The Commonwealth urges us to overrule the "direct appeal" rule of *Little* and substitute a "date of occurrence" standard for questions involving the prospectivity of our de-

cisions. We refuse to adopt the rule suggested by the Commonwealth.

As Mr. Justice Roberts stated in a dissenting opinion (joined by Mr. Justice Cohen and this writer) to *Commonwealth v. Jefferson*, 430 Pa. 532, 541, 243 A.2d 412, 416 (1968):

". . . the Supreme Court of the United States has used at least three distinct events to anchor the prospectivity of its decisions: (1) whether the litigation is final (Linkletter); (2) the date of the commencement of trial (Johnson); and (3) the date upon which the alleged constitutional violation occurred (Stovall). At least two of these three alternatives were available to this Court when Dravecz [424 Pa. 582, 227 A.2d 904 (1967)] was decided. . . . Had we chosen the Johnson rule, Jefferson would not be able to assert the rights established in Dravecz for his trial commenced well before Miranda. We did not. *Instead, this Court employed the Linkletter finality concept and, under Linkletter, this judgment is not final.*" (Emphasis added.)

We recognize that various inequities arise in all three standard when one litigant benefits from a decision and another, seemingly similarly situated, is denied the same benefit. We are of the opinion that the *Little-Linkletter* finality approach, which was first announced in *United States v. Schooner Peggy*, 1 Cranch 103, 2 L.Ed. 49 (1801), should remain as the standard for issues of applicability of court decisions in this Commonwealth.

Judgments of sentence reversed and case remanded for a new trial consistent with this opinion.

NIX, J., joins in Part I of this opinion and files a concurring opinion concerning Part II of the opinion.

POMEROY, J., files a dissenting opinion in which JONES, C. J., and EAGEN, J., join.

NIX, Justice, concurring.

I agree with Part I of the Opinion of the Court. I am compelled to write this concurring opinion because I can not accept the views expressed in Part II.

First, I question the need for the discussion in Part II since as the majority has indicated the applicability of the McCutchen [1] rule to all matters still on direct appeal has already been decided by this Court in *Commonwealth v. Chaney*, 465 Pa. 407, 350 A.2d 829 (1975).[2] For this reason it is clear that the doctrine applied to this appellant and for that reason I agree with the result reached in the Opinion of the Court.

However, I am in serious disagreement with the general proposition expressed by Mr. Justice O'Brien that *all* new changes in the law should be available to one on direct appeal. As noted by the United States Supreme Court we should not blindly embrace an inflexible rule of thumb for determining the applicability of a new change of law but rather we should make a decision in each case depending upon the purposes sought to be served by the new rule, the extent of reliance by law enforcement officials on the old standards and the effect on the administration of justice of a retroactive application of the new standard. *Desist v. United States*, 394 U.S. 244, 89 S.Ct. 1030, 22 L.Ed.2d 248 (1969). *See also, Williams v. United States*, 401 U.S. 646, 91 S.Ct. 1148, 28 L.Ed.2d 388 (1971); *Fuller v. Alaska*, 393 U.S. 80, 89 S.Ct. 61, 21 L.Ed.2d 212 (1968).

POMEROY, Justice, dissenting.

The majority opinion is correct that the question of the retroactive application of the exclusionary rule an-

1. *Commonwealth v. McCutchen*, 463 Pa. 90, 343 A.2d 669 (1975).

2. "While appellant's arrest, confession and trial took place before our decisions concerning a juvenile's waiver of his Miranda rights, he is nevertheless entitled to the benefit of those decisions since he was on direct appeal at the time of our McCutchen decisions." (Citations omitted) *Commonwealth v. Chaney*, supra at 409, 350 A.2d at 830.

nounced in the *McCutchen* [1] line of decisions has already been decided in *Commonwealth v. Chaney*, 465 Pa. 407, 350 A.2d 829 (1975). While I expressed disagreement with that decision, I did not reach the retroactivity issue since my dissenting opinion (which was joined by Mr. Chief Justice Jones and Mr. Justice Eagen) was directed to the wisdom of the Court's fashioning a per se exclusionary rule with regard to juvenile confessions. [2] I therefore take this opportunity to address the issue of that rule's retroactive application.

Under this Court's decisions, reversal is required whenever a juvenile waives the constitutional rights prescribed by *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), without the opportunity of first consulting with a parent or other interested adult who himself has been advised of the juvenile's constitutional rights. See *McCutchen, supra,* and cases cited therein. Inasmuch as the holding of *McCutchen* has its genesis in the decision of the United States Supreme Court in *Miranda, supra,* that Court's decision with regard to *Miranda*'s retrospective application should be considered highly persuasive in resolving the instant retroactivity issue.

In *Johnson v. New Jersey*, 384 U.S. 719, 86 S.Ct. 1772, 16 L.Ed.2d 882 (1966), the Court held that the *Miranda* decision was applicable only to cases in which trial commenced after the date of announcement of the decision. The *Johnson* Court reasoned as follows:

"Future defendants will benefit fully from our new standards governing in-custody interrogation, while past defendants may still avail themselves of the voluntariness test. Law enforcement officers and trial courts will have fair notice that statements taken in

1. *Commonwealth v. McCutchen,* 463 Pa. 90, 343 A.2d 669 (1975).

2. See also the dissenting opinions of Mr. Justice Eagen (joined by Mr. Chief Justice Jones and this writer) in *Commonwealth v. Roane,* 459 Pa. 389, 329 A.2d 286 (1974), and *Commonwealth v. Starkes,* 461 Pa. 178, 335 A.2d 698 (1975).

violation of these standards may not be used against an accused. Prospective application only to trials begun after the standards were announced is particularly appropriate here. Authorities attempting to protect the privilege have not been apprised heretofore of the specific safeguards which are now obligatory. Consequently they have adopted devices which, although below the constitutional minimum, were not intentional evasions of the requirements of the privilege. In these circumstances, to upset all of the convictions still pending on direct appeal which were obtained in trials preceding Escobedo and Miranda would impose an unjustifiable burden on the administration of justice." *Id.* at 732–733, 86 S.Ct. at 1780–1781.

To my mind, that rationale is altogether sound and is equally applicable to the situation now before us. I would therefore hold that this Court's prophylactic rule regarding juvenile confessions should be limited to cases whose trial commenced after the rule was announced. Hence this dissent.

JONES, C. J., and EAGEN, J., join in this dissenting opinion.