394 A.2d 461

**COMMONWEALTH of Pennsylvania**

v.

**Kenneth BARNES, Appellant.**

Supreme Court of Pennsylvania.

Reargued Oct. 16, 1978.

Decided Nov. 18, 1978.

556

Alexander Hemphill, Philadelphia, for appellant.

Edward G. Rendell, Dist. Atty., Steven H. Goldblatt, Deputy Dist. Atty. for Law, Robert B. Lawler, Chief, Appeals Div., Neil Kitrosser, Philadelphia, for appellee.

Before EAGEN, C. J., and O'BRIEN, ROBERTS, POMEROY, NIX, MANDERINO and LARSEN, JJ.

## OPINION

NIX, Justice.

This is an appeal[1] from a judgment of sentence of ten to twenty years imprisonment entered after a non-jury trial finding appellant guilty of murder of the third degree. *See* 18 Pa.C.S.A. § 2502(c) (Supp.1978–79). The sole issue presented is whether certain inculpatory statements by appellant, then a juvenile, were taken by police in violation of the waiver standards governing juvenile confessions as set forth in *Commonwealth v. McCutchen*, 463 Pa. 90, 343 A.2d 669 (1975), and its progeny.[2] The trial court found an effective waiver. For the reasons set forth below, we disagree and reverse judgment and order a new trial.

1. This Court's jurisdiction is based upon section 202(1) of the Appellate Court Jurisdiction Act of 1970. 17 P.S. § 211.202(1) (Supp.1978–79), *superseded by* 42 Pa.C.S.A. § 722(1) (1978 Pamphlet, part I).

2. For a brief discussion of the development of the law governing such confessions, *see Commonwealth v. Smith*, 472 Pa. 492, 498–99 & n.6, 372 A.2d 797, 800 & n.6 (1977). In the instant case, although the statement by appellant and the trial of appellant occurred prior to this Court's decision in *Commonwealth v. McCutchen*, 463 Pa. 90, 343 A.2d 669 (1975), we have held that cases on direct appeal are entitled to the benefit of *McCutchen* and its progeny. *Commonwealth v. Graver*, 473 Pa. 473, 476 n.1, 375 A.2d 339, 340 n.1 (1977), *citing Commonwealth v. Chaney*, 465 Pa. 407, 350 A.2d 829 (1975).

The facts are as follows: On August 5, 1974 at about 8:00 p. m., appellant, then fifteen years of age, was arrested by Philadelphia police in connection with the July 20th stabbing death of another juvenile, Thomas Anthony. Following his arrest, appellant was transported to the 17th District Police Station where he remained until 9:30 p. m. at which time he was transported to the Police Administration Building (PAB). Upon arriving at the PAB, appellant was asked whether he wanted his father present; appellant stated that he did not. Sometime between 9:45 p. m. and 10:00 p. m. appellant was questioned by a Detective Paris, without first being given Miranda[3] warnings. In response, appellant indicated his name, age, residence, school grade, the fact that he could read and write, and that his parents were separated and he resided with his father; these responses were reduced to a written memorandum, which appellant read and signed. Shortly thereafter, at about 10:00 p. m., Detective Paris informed appellant of the offense in question and gave him the Miranda warnings. Appellant indicated, both orally and in writing, his desire to waive his Miranda rights. At about the same time, appellant was again asked whether he wanted his father to be present; again he stated that he did not. Sometime between 10:00 p. m. and 11:00 p. m., appellant admitted his participation in the killing of Thomas Anthony. This statement was transcribed and appellant read and signed it.

Except for a visit to the lavatory at about midnight and a meal at about 12:30 a. m., appellant was left alone in the PAB interrogation room from 11:00 p. m. until 4:00 a. m. Although the record does not conclusively establish the exact time of appellant's arraignment, it is safe to infer that appellant was arraigned sometime shortly after 4:00 a. m. Just before being arraigned, appellant telephoned his father, but appellant was informed by his sister that the father was already enroute to the PAB, in response to a telephone call from the Juvenile Division. Appellant's father did arrive in time to talk to appellant at the time of arraignment.

3. Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

Appellant moved to suppress his inculpatory statements on the grounds that they were not given voluntarily. The trial court denied the motion and ruled that the statements would be admissible at trial. In written post trial motions appellant again challenged the admissibility of the statements.[4] The trial court upheld the earlier finding that the statements were admissible and entered judgment on the verdicts. This appeal followed.

The underlying rationale for this Court's special solicitousness toward juveniles confronted by police interrogation was explained recently in *Commonwealth v. Smith*, 472 Pa. 492, 372 A.2d 797 (1977):

"In a series of our decisions beginning with *Commonwealth v. Roane, supra*, [459 Pa. 389, 329 A.2d 286], we announced that the administering of *Miranda* warnings to a juvenile, without providing an opportunity to that juvenile to consult with a mature, informed individual concerned primarily with the interest of the juvenile, was inadequate to offset the disadvantage occasioned by his youth. The new rule appreciates that the inexperience of the minor affects not only his or her ability to understand the full implication and consequences of the predicament but also renders the judgment inadequate to assess the spectrum of considerations encompassed in the waiver decision. It was therefore reasoned that the impediment of immaturity can only be overcome where the record establishes that the youth had access to the advice of an attorney, parent, or other interested adult and that the consulted adult was informed as to the constitutional rights available to the minor and aware of the consequences that might follow the election to be made."

4. Reargument was granted by this Court in the instant case limited to whether appellant had properly preserved his issues on appeal for appellate review. *See Commonwealth v. Blair*, 460 Pa. 31, 331 A.2d 213 (1975). Appellee, in its brief on reargument, concedes that appellant properly preserved the *McCutchen* issue in accordance with *Blair* and Pennsylvania Rule of Criminal Procedure 1123. Because we conclude that the *McCutchen* rule was violated and a new trial is necessary, we need not determine whether the other issues raised by appellant were properly preserved for our review.

*Id.,* 472 Pa. at 498–99, 372 A.2d at 800 (footnotes and citations omitted).

From *Smith* and its predecessors, the following elements have emerged as prerequisites to a juvenile's waiver of his or her Fifth and Sixth Amendment rights:

(1) the juvenile must be given the opportunity to consult with an adult;

(2) the adult must be one who is genuinely interested in the welfare of the accused juvenile;

(3) the interested adult must be informed and aware of those Fifth and Sixth Amendment rights guaranteed to the juvenile.

*Commonwealth v. Smith, supra,* 472 Pa. at 500–02, 504, 372 A.2d at 801–02, 803.

 It requires no complicated analysis to reach the conclusion that in the instant case the Commonwealth did not satisfy these prerequisites. Shortly after appellant's arrival at the PAB, the police knew where appellant resided, and that he lived with his father. In spite of this knowledge, the record shows no effort by police to contact appellant's father before interrogating appellant about the homicide. In fact the only evidence leads to the conclusion that appellant's father was only notified of his son's status shortly before the arraignment, some five or six hours *after* appellant made his inculpatory statement. The only adults "consulted" by appellant prior to arraignment were police officers. The Commonwealth argues that appellant voluntarily waived his right to consult with an interested and informed adult. To accept this argument would render meaningless the protection afforded to juveniles by *McCutchen.* The essence of our doctrine relating to juvenile waiver is that the benefit of consultation with counsel or an interested, concerned and knowledgeable adult prior to a decision to waive Fifth and Sixth Amendment rights counterbalances the immaturity of the youthful accused. *Commonwealth v. Smith, supra.* It is only after a meaningful consultation has taken place that it can be found that the disadvantage occasioned by the juvenile's immaturity has

been offset to some degree. Since the ultimate decision, even after the consultation, must be made by the juvenile, his immaturity can not be completely removed from the equation. At best we can hope by this process to impress upon him the seriousness of the decision and to apprise him of his options and the consequences that might follow the path he elects. The Commonwealth lays great stress on the fact that appellant expressed a desire not to speak with his father. This is the type of decision that reflects the immaturity that the doctrine is designed to guard against. Obviously the appellant was more concerned with parental disapproval and failed to perceive the more important need at that moment for consulting with one who was concerned with his welfare. It is only after a meaningful consultation that we can be satisfied that the juvenile possesses an informed judgment capable of making such a grave decision. We therefore decline to adopt the argument urged by the Commonwealth.[5]

Judgment of sentence is reversed and a new trial is ordered.

POMEROY, J., filed a dissenting opinion in which EAGEN, C. J., and LARSEN, J., join.

POMEROY, Justice, dissenting.

It would perhaps suffice in this case merely to repeat my long-held views (1) that this Court's rules regarding waivers of *Miranda* rights by juveniles are "unwise, unnecessary, and unwarranted,"[1] and (2) that the application of these rules to

---

5. In mustering factual support for the waiver argument, the Commonwealth states that because appellant later validly waived his right to a jury trial, he could also have validly waived his right to consult with his father during police interrogation. In pressing this argument, the Commonwealth ignores the fact that appellant waived a jury trial after consulting not only with his father but also with an attorney.

1. *Commonwealth v. Chaney*, 465 Pa. 407, 409, 350 A.2d 829 (1975) (Pomeroy, J., dissenting, joined by Jones, C. J., and Eagen, J.). See also, *e. g., Commonwealth v. Smith*, 472 Pa. 492, 506, 372 A.2d 797, 804 (1977) (Pomeroy, J., dissenting, joined by Eagen, C. J.); *Commonwealth v. Webster*, 466 Pa. 314, 329–31, 353 A.2d 372 (1975)

this arrest and interrogation, occurring as they did before this doctrine had evolved[2] is particularly without justification, since the exclusion of appellant's statement "is not a response to police activity in disregard of a rule of law which they knew or should have known . . ."[3] This case, however, warrants some additional discussion, because of the majority's holding that the fact that before he made his inculpatory statement appellant stated twice that he did not want his father to be present is not evidence of a knowing and intelligent waiver, but rather only of appellant's "immaturity."

The majority now states that the opportunity to consult with an interested adult is not enough; in addition, it must be shown that there was a "meaningful consultation" between the juvenile and an adult who is aware of the juvenile's rights before a valid waiver can be said to have taken place. Opinion of the Court, *ante* at 557.[4] Thus the Court

(Pomeroy, J., dissenting); *Commonwealth v. Stanton*, 466 Pa. 143, 151, 351 A.2d 663, 667 (1976) (Pomeroy, J., dissenting); *Commonwealth v. Starkes*, 461 Pa. 178, 190, 335 A.2d 698 (1975) (Eagen, J., dissenting, joined by Jones, C. J., and Pomeroy, J.).

2. See *Commonwealth v. Roane*, 459 Pa. 389, 329 A.2d 286 (1974); *Commonwealth v. Starkes*, supra note 1; *Commonwealth v. McCutchen*, 463 Pa. 90, 343 A.2d 669 (1975).

3. *Commonwealth v. Harvell*, 473 Pa. 418, 423, 374 A.2d 1282, 1285 (1977) (Pomeroy, J., dissenting, joined by Eagen, C. J.). See also, *e. g., Commonwealth v. Lawson*, 478 Pa. 200, 207, 386 A.2d 509, 512 (1978) (Pomeroy, J., dissenting, joined by Eagen, C. J.); *Commonwealth v. Walker*, 477 Pa. 370, 377, 383 A.2d 1253, 1256 (1978) (Pomeroy, J., dissenting, joined by Eagen, C. J., and Larsen, J.); *Commonwealth v. Lee*, 475 Pa. 314, 316, 380 A.2d 371 (1977) (Pomeroy, J., dissenting, joined by Eagen, C. J.); *Commonwealth v. Graver*, 473 Pa. 473, 477, 375 A.2d 339, 340 (Pomeroy, J., dissenting); *Commonwealth v. Gaskins*, 471 Pa. 238, 242, 369 A.2d 1285, 1287 (1977) (Pomeroy, J., dissenting, joined by Jones, C. J., and Eagen, J.); *Commonwealth v. Lee*, 470 Pa. 401, 406, 368 A.2d 690, 693 (1977) (Pomeroy, J., dissenting, joined by Jones, C. J., and Eagen, J.).

4. *Cf. Commonwealth v. Smith, supra* note 1, 472 Pa. at 505–06, 372 A.2d at 803–04 (Manderino, J., concurring). The new rule may still be difficult to apply, for how is one to know that the mandated consultation has in fact been "meaningful"?

has made explicit what prior cases had strongly implied.[5] Although the Court's conceptual basis is now consistent, today's decision, like those which have preceded it, fails to explain the basis for the doctrine's central assumption, *viz.*, that all persons under the age of eighteen must be deemed incapable of ever making on their own the decision of whether to talk to the police in a custodial setting. For my own part, "I adhere to the view that *some* minors in *some* circumstances are capable of effectively waiving their constitutional rights without the advice of any adult and that no purpose is served by a per se rule which excludes from evidence a confession made by any juvenile whether or not the traditional test of voluntariness would mandate such exclusion."[6] Hence this dissent.

EAGEN, C. J., and LARSEN, J., join in this dissenting opinion.

**5.** See, *e. g.*, *Commonwealth v. Starkes, supra* note 1 (mother advises son to "tell the truth;" waiver found invalid); *Commonwealth v. Smith, supra* note 1. Apparently, today's holding is the Court's answer to the question which I ventured to put in my dissent in *Smith, supra* note 1, *viz.*, whether "the minor could effectively reject . . . an opportunity [to consult with a concerned adult], which the majority has invested with due process significance, when by hypothesis he is unable to make a valid waiver of his other constitutional rights regarding interrogation without the guidance of a concerned adult." 472 Pa. at 508 n.4, 372 A.2d at 805 n.4.

**6.** *Commonwealth v. Smith, supra* note 1, 472 Pa. at 509, 372 A.2d at 805 (emphasis in the original).