446 A.2d 1268

**COMMONWEALTH of Pennsylvania**

v.

**Louis HERNANDEZ a/k/a Jose Hernandez, Appellant.**

Supreme Court of Pennsylvania.

Argued April 20, 1982.

Decided June 29, 1982.

Donald G. Joel, Michael E. Garner, Philadelphia, for appellant.

Robert B. Lawler, Chief, Appeals Div. Asst. Dist. Atty., Philadelphia, for appellee.

Before O'BRIEN, C. J., and ROBERTS, NIX, LARSEN, FLAHERTY, McDERMOTT and HUTCHINSON, JJ.

## OPINION

NIX, Justice.

This case arose out of the death of Michael Kochmanowicz, ninety-one years old, whose body was discovered bound and gagged on his living room floor. The body was tied in such a fashion that the bindings included a connection between the wrist, up the center of the back to a gag. The gag passed under the tongue and forced it backward to where it blocked the passage of air through the mouth and nose. The effect was that if the deceased attempted to ease the pressure of the gag on his tongue, he would cause additional pain to his shoulder and if he attempted to relieve the pain in his shoulder by relaxing his arms, he would cause the gag to become tighter. Mr. Kochmanowicz's death was caused by suffocation and multiple injuries of the head and trunk.[1] Appellant took a clock radio when he departed from the house.

Appellant was arrested on April 17, 1972 attempting to flee from another home in the neighborhood occupied by a 77-year old woman who also lived alone. The burglary of April 17, 1972 was committed with an accomplice who was shot by the police in their attempt to escape.[2] While in custody for the April 17, 1972 burglary, the appellant was fingerprinted and it was ascertained that his fingerprints corresponded to a print lifted from the broken second floor window of Mr. Kochmanowicz's home. After interrogation, appellant confessed to the burglary of the home of Mr. Kochmanowicz on April 12, 1972 and to causing his death. Appellant was convicted by a jury of murder in the first

---

1. It appears that the victim remained alive for several days before suffocating. The body was discovered by the decedent's daughter on April 17, 1972.

2. Although appellant consistently maintained in his confessions that he committed the crimes of April 12, 1972 alone, a co-defendant (Eldimiro Colon) was arrested and convicted of the charges. We affirmed that conviction in *Commonwealth v. Colon*, 461 Pa. 577, 337 A.2d 554 (1975) and recently affirmed the denial of Post-Conviction Hearing Act relief in *Commonwealth v. Colon*, 496 Pa. 416, 437 A.2d 942 (1981).

degree, burglary and robbery and was sentenced. Appellant appeals from the judgments of sentence.[3]

The first question to be considered is whether the introduction of appellant's confession violates the doctrine of this Commonwealth that has become known as the *McCutchen* rule. This doctrine which was first articulated in *Commonwealth v. Roane*, 459 Pa. 389, 329 A.2d 286 (1974); *Commonwealth v. Starkes*, 461 Pa. 178, 335 A.2d 698 (1975); and *Commonwealth v. McCutchen*, 463 Pa. 90, 343 A.2d 669, *cert. denied* 424 U.S. 934, 96 S.Ct. 1147, 47 L.Ed.2d 341 (1975) provides that an accused under 18 years of age may not effectively waive his constitutional rights against self incrimination and the right to counsel without being provided an opportunity to consult with an attorney or with an adult, interested and concerned in the welfare of the juvenile suspect and who possesses the requisite awareness of the rights of the accused. *Commonwealth v. Barry Smith*, 472 Pa. 492, 372 A.2d 797 (1977). *See also, Commonwealth v. Chaney*, 465 Pa. 407, 350 A.2d 829 (1975); *Commonwealth v. Riggs*, 465 Pa. 208, 348 A.2d 429 (1975); *Commonwealth v. Webster*, 466 Pa. 314, 353 A.2d 372 (1975); *Commonwealth v. Stanton*, 466 Pa. 143, 351 A.2d 663 (1976); *Commonwealth v. Gaskins*, 471 Pa. 238, 369 A.2d 1285 (1977); *Commonwealth v. Lee*, 470 Pa. 401, 368 A.2d 690 (1977); *Commonwealth v. Hailey*, 470 Pa. 488, 368 A.2d 1261 (1977); *Commonwealth v. Smith*, 472 Pa. 492, 372 A.2d 797 (1977); *Commonwealth v. Graver*, 473 Pa. 473, 375 A.2d 339 (1977); *Commonwealth v. Jamison*, 474 Pa. 541, 379 A.2d 87 (1977); *Commonwealth v. Crenshaw*, 475 Pa. 106, 379 A.2d 1305 (1977); *Commonwealth v. Markle*, 475 Pa. 266, 380 A.2d 346 (1977); *Com-*

---

**3.** This appeal was delayed for the following reasons: The original appeal was *non prossed* on July 2, 1974 for failure to file a brief. Thereafter, on January 3, 1980 new counsel petitioned to remove the *non pros.* We denied the petition on February 12, 1980 without prejudice to appellant's right to seek relief under the Post Conviction Hearing Act, Act of January 25, 1966, P.L. 1580, 19 P.S. § 1180–1 *et seq.* (Supp.1981–82). Appellant filed a PCHA petition seeking only an appeal *nunc pro tunc.* Following a hearing on June 6, 1980, appellant was granted the right to file an appeal *nunc pro tunc* by the PCHA court.

monwealth v. McCloud, 477 Pa. 204, 383 A.2d 894 (1978);
Commonwealth v. Walker, 477 Pa. 370, 383 A.2d 1253 (1978);
Commonwealth v. Lawson, 478 Pa. 200, 386 A.2d 509 (1978);
Commonwealth v. Barnes, 482 Pa. 555, 394 A.2d 461 (1978);
Commonwealth v. Hackett, 484 Pa. 43, 398 A.2d 651 (1979);
Commonwealth v. Wade, 485 Pa. 453, 402 A.2d 1360 (1979);
Commonwealth v. Thomas, 486 Pa. 568, 406 A.2d 1037 (1979);
Commonwealth v. Nelson, 488 Pa. 148, 411 A.2d 740 (1980);
Commonwealth v. Veltre, 492 Pa. 237, 424 A.2d 486 (1981);
Commonwealth v. Miller, 494 Pa. 229, 431 A.2d 233 (1981);
Commonwealth v. Henderson, 496 Pa. 349, 437 A.2d 387
(1981).

■ Before we can reach the merits of this contention we are faced with a question of whether the issue was properly preserved. *Commonwealth v. Gravely*, 486 Pa. 194, 404 A.2d 1296 (1979); *Commonwealth v. Clair*, 458 Pa. 418, 326 A.2d 272 (1974). We first note the fact that the arrest in this case on April 17, 1972 preceded our decisions in *Commonwealth v. Roane, Commonwealth v. Starkes* and *Commonwealth v. McCutchen* does not preclude the application of this rule to an appellant whose direct appeal was pending at the time of those decisions. *Commonwealth v. Barnes*, 482 Pa. 555, 557 n. 2, 394 A.2d 461 n. 2 (1978); *Commonwealth v. Chaney*, 465 Pa. 407, 350 A.2d 829 (1976). However, the *Chaney* decision did not relieve appellant of the responsibility of properly preserving the question for review. *See, e.g. Commonwealth v. Barnes, supra*, 482 Pa. at 559 n. 4, 394 A.2d at 463 n. 4.

■ Trial counsel filed a boiler plate post-trial motion asserting that the verdict was contrary to law, insufficient evidence and that "the Commonwealth did not sustain its burden in proving the jurisdiction of the crime." Although this motion contained a request to file additional reasons "as they arise," the record reflects no effort to supplement that motion. From the trial court's opinion disposing of post-trial motions, it appears that the involuntariness of the confession was argued, but there was no assertion that the defend-

ant's immaturity due to age prevented him from appreciating his rights.[4]

The heart of the *McCutchen* rule is the concern that the immaturity of a minor defendant requires its added protection. *See Commonwealth v. Barry Smith*, 472 Pa. 492, 372 A.2d 797 (1977). Since the post-trial motions occurred before the definitive articulation of the *McCutchen* concept, some latitude must necessarily be allowed in a determination as to whether or not the issue was in fact raised. Nevertheless, the preservation of the question must depend on it being established that the gravamen of the concern was presented as a basis for relief. In this instance it is clear that the attack upon the confession did not touch upon those considerations which led to the formulation of the *McCutchen* doctrine.

Moreover, the *Barnes* and *Chaney* decisions providing for the retroactive application of *McCutchen* to then pending cases can in no way be construed as allowing new issues to be introduced which were not then under consideration in those proceedings. The retroactive application of *McCutchen* represented the implicit acceptance of the view that fairness dictated the applicability of the newly announced principle to all similarly situated litigants. *Commonwealth v. Hill*, 492 Pa. 100, 111, 422 A.2d 491, 497 (1980) (Opinion in Support of Reversal, Roberts, J.); *Commonwealth v. Cain*, 471 Pa. 140, 167, 369 A.2d 1234, 1248 (1977) (Opinion in Support of Affirmance, Pomeroy, J.). In such an instance it is fair to conclude that all of those litigants were in the same situation and the outcome of their lawsuit should not depend on a race to the courthouse. However, a different situation obtains where one has seen fit to raise the objection and another has not. We therefore conclude that appellant has failed to preserve the *McCutchen* claim for our review.

4. The post-trial challenge to the confession consisted of complaints that physical force was employed to coerce the confession; that he was in a weakened state because of heroin withdrawal; and that his educational deficiency and unfamiliarity with the English language rendered him unable to understand the nature and import of the constitutional warnings.

■ We next turn to the question as to whether or not under the totality of the circumstances there is a basis for concluding that the challenged statement was in fact involuntarily given. *Commonwealth v. Betrand*, 484 Pa. 511, 399 A.2d 682 (1979); *Commonwealth v. Ash*, 482 Pa. 590, 394 A.2d 479 (1978); *Commonwealth v. Kampo*, 480 Pa. 516, 391 A.2d 1005 (1978); *Commonwealth v. Kichline*, 468 Pa. 265, 361 A.2d 282 (1976); *Commonwealth v. Johnson*, 467 Pa. 146, 354 A.2d 886 (1976); *Commonwealth v. Crosby*, 464 Pa. 337, 346 A.2d 768 (1975); *Commonwealth v. Tucker*, 461 Pa. 191, 335 A.2d 704 (1975); *Commonwealth v. Jones*, 457 Pa. 423, 322 A.2d 119 (1974); *Commonwealth v. Madilia*, 439 Pa. 125, 266 A.2d 633 (1970); *Commonwealth v. Graham*, 408 Pa. 155, 182 A.2d 727 (1962). In addition to the claimed physical force, the weakened condition and the lack of education and unfamiliarity with the language, new counsel in his brief to this Court has expanded his argument to include the immaturity of the appellant. Even with this amplification of appellant's position, we are constrained to conclude, as did the court below, that it has not been established that the confession was involuntarily obtained.

Turning the attention first to his ability to comprehend and understand his rights to counsel and the protection against self incrimination, it is significant that although he was 16 years, 9 months of age at the time of the interrogation, he had previously experienced nine (9) other encounters with the law.[5] This history suggests that the custodial atmosphere was not as traumatic as it would be for one initially experiencing it and further, would have provided him with at least an acquaintance of the procedures to be

5. 10/27/69   Larc. of auto., RSG, Consp.
   11/1/69    Larc. of auto., RSG, Consp.
   4/27/70    Tresp. D/C
   5/29/70    Larc., RSG, Consp.
   4/2/70     Truancy Petn.
   12/26/70   Larc. of auto., RSG, Consp. OWOC
   2/20/71    Att. Burg. and Consp.
   2/24/71    Burg. fr. auto., Consp., Loit. & Prowl., Accwss. before and after fact.
   7/30/71    Burg., Poss. of burg. tools, Consp.

expected upon arrest.[6] During the instant custodial interrogation, appellant was warned of his *Miranda* rights on at least five (5) different occasions. Three (3) of these warnings occurred before an inculpatory statement was elicited.

Appellant's reliance upon his asserted unfamiliarity with the language is belied by the fact that he testified in all of the proceedings in English although an interpreter was present or available on each of these occasions. Moreover, our examination of the record of his testimony in the various proceedings confirms the trial court's finding that he had sufficient understanding of the language to comprehend what was transpiring. In addition to the written record, this court heard a tape recorded account of the third and final statement given by the appellant in response to questions put to him by the interrogating officers which further confirmed the trial court's findings.

With regard to his Intelligence Quotient (I.Q.) of 55, the Commonwealth's expert suggested that it did not reflect an inability to comprehend. To the contrary, the expert expressed the opinion that appellant possessed average potential and that the low testing score could be attributed to his illiteracy in the English and Spanish languages.[7] The Commonwealth offered as additional evidence to establish that the confession was knowingly made the observation of the officers who testified that appellant was able to understand their questions and to give responsive answers. From the foregoing, it is apparent there is no basis for concluding that the confession was not knowingly made.

▅▅▅ This record also fails to demonstrate that his will was overborne. Although it is clear that ill health may well influence the will to resist, *Commonwealth v. Perry*, 475 Pa. 1, 379 A.2d 545 (1977) and make an accused prone to overbearing and improper questioning, *Commonwealth v. Hol-*

---

6. During several prior arrests, he was given his warnings and refused to make a statement.

7. Appellant stated during questioning that he could not read or write English or Spanish. However, he stated he could sign his name and did sign the written confession.

*ton,* 432 Pa. 11, 247 A.2d 228 (1968), the issue which causes ill health to be relevant is whether or not the accused's will *was* overborne at the time he made the statements. The fact that appellant complained of mild heroin withdrawal three hours after he had completed all of the inculpatory statements does not support a charge that he was in ill health at the time the statements were made. The complaint of mild heroin withdrawal, first reported after the inculpatory statements had been made, does not reflect such a weakened condition which would be likely to cause appellant to succumb to the pressures of interrogation. Moreover, we note that appellant maintained that he acted alone in the commission of these offenses although it was subsequently established that he acted in concert with an accomplice. We therefore conclude that the statement was not only knowingly made but was also the product of his free will.

■ Next, appellant attempts to cite two instances of counsel's ineffectiveness. First, appellant alleges ineffective assistance of trial counsel for failure to preserve the issue that his confession was the product of an unnecessary delay between arrest and arraignment. *Commonwealth v. Futch,* 447 Pa. 389, 290 A.2d 417 (1972). There is no arguable merit to this claim and therefore it was not incumbent upon counsel to assert it. *Commonwealth v. Musi,* 486 Pa. 102, 404 A.2d 378 (1979); *Commonwealth v. Sherard,* 483 Pa. 183, 394 A.2d 971 (1978); *Commonwealth v. Hubbard,* 472 Pa. 259, 372 A.2d 687 (1977). The record demonstrates that appellant was formally informed that he was a suspect in Mr. Kochmanowicz's death at 3:23 a.m., April 18, 1972. Appellant confessed at 9:35 a.m., six hours and thirteen minutes after questioning commenced on these charges.[8]

The record further reflects that this was not a continuous period of interrogation. A portion of the period was expended in attempts to reach members of appellant's family

8. Appellant attempts to extend this time by including in the period of unnecessary delay the period of time during which he was being questioned for the unrelated burglary. This he may not do. *Commonwealth v. Wiggins,* 472 Pa. 95, 371 A.2d 207 (1977); *Commonwealth v. Terry,* 457 Pa. 185, 321 A.2d 654 (1973).

for their presence during the interrogation. We must also exclude approximately two hours consumed in the administration of a polygraph test which we have previously held to be a necessary step in the investigative process when agreed to by the defendant and given promptly after that agreement. *Commonwealth v. Smith,* 487 Pa. 626, 410 A.2d 787 (1980); *Commonwealth v. Blagman,* 458 Pa. 431, 326 A.2d 296 (1974). Therefore, the suppression court did not err in failing to suppress his statements because of an unnecessary delay.

The second alleged instance of ineffectiveness was counsel's failure to raise in post-trial motions the objection of prejudicial remarks made by the prosecutor. During the cross-examination of Detective Potocnak, defense counsel began questioning whether the detective properly punctuated appellant's statement when the detective wrote it down. When trial counsel requested that the record indicate that the prosecutor was shaking his head as the questions were asked to the detective, the prosecutor replied, "I am just shaking my head because of the stupidness of the question." Trial counsel immediately moved for a mistrial, a motion which was denied by the court below. When trial counsel argued that the prosecutor was trying to imply that he (appellant's counsel) was stupid for asking the question, the prosecutor interjected, "It's a stupid question."

A mistrial is required only when an incident is of such a nature that its unavoidable effect is to deprive appellant of a fair trial. *Commonwealth v. Brown,* 489 Pa. 285, 414 A.2d 70 (1980); *Commonwealth v. Stoltzfus,* 462 Pa. 43, 337 A.2d 873 (1975). *Commonwealth v. Simon,* 432 Pa. 386, 248 A.2d 289 (1968). Not every unwise statement by a prosecutor warrants reversal and the trial judge, being in the best position to determine the appropriate remedy, will not be reversed except for an abuse of discretion. *Commonwealth v. Stoltzfus, supra.* In the heat of the fray, unfortunately all too frequently these extraneous retorts are made. In this case the court appropriately rebuked counsel. While we do not condone this departure from the objectivity expected

416

during trial, it is obviously not the type of incident that engendered prejudice which adversely affected appellant or prevented a fair trial.

Judgments of Sentence Affirmed.

O'BRIEN, C. J., and ROBERTS, J., concur in the result.