424 A.2d 486

**COMMONWEALTH of Pennsylvania**

v.

**John VELTRE, Appellant.**

Supreme Court of Pennsylvania.

Dec. 3, 1980.

Reargument Denied Feb. 3, 1981.

---

238

Alfred B. Bell, Asst. Public Defender, Greensburg, for appellant.

James J. Conte, Albert C. Gaudio, Asst. Dist. Attys., Greensburg, for appellee.

## OPINION

PER CURIAM.

The Court being equally divided, the order is affirmed.

LARSEN, J., filed an opinion in support of affirmance in which FLAHERTY and KAUFFMAN, JJ., joins.

ROBERTS, J., filed an opinion in support of reversal joined by O'BRIEN, C. J.

NIX, J., filed an opinion in support of reversal.

## OPINION IN SUPPORT OF AFFIRMANCE

LARSEN, Justice.

On September 17, 1973, appellant John Veltre entered pleas of guilty to four indictments charging two counts of murder, rape, and assault with intent to kill. He was sentenced to two concurrent terms of life imprisonment on the indictments charging murder, a consecutive term of imprisonment of 5 to 20 years on the indictment charging rape, and received a suspended sentence on the indictment charging assault with intent to kill. Subsequently, on April 24, 1974, appellant filed a petition under the Post Conviction Hearing Act alleging that his guilty pleas were not knowingly, intelligently, and voluntarily entered. Following a hearing on the petition, a new trial was ordered. The Commonwealth appealed that order, and this Court affirmed.[1]

Appellant then proceeded to trial before a jury and was found guilty of two counts of murder of the first degree, rape, and assault with intent to kill. The same sentence set forth above was imposed, and appellant brought this appeal.

The sole issue presented by appellant is whether the courts below erred in not suppressing inculpatory statements he made to the police following his arrest. The events which lead up to those statements are as follows:

During the evening hours of February 14, 1973, appellant, who was sixteen years and eleven months of age, consumed three to four cans of beer and then went to the Manor Park Apartments in Monessen, Pennsylvania. He entered the apartment of Alys Morgan and forced her to have sexual intercourse with him by striking and choking her. Because Mrs. Morgan continued to scream after appellant had completed his sexual attack, appellant threw her against a wall, struck her in the head, "stomped" on her several times, and left her on the floor believing she was dead. Fearing that his victim's two-year-old daughter might identify him, he went into the child's bedroom, picked her up, threw her

1. See *Commonwealth v. Veltre*, 475 Pa. 285, 380 A.2d 356 (1977).

against a wall, and then "stomped" on her as well.  Finally, appellant went into the bedroom of Mrs. Morgan's two-month-old daughter and threw her against a wall.  He then heard a knock on the apartment door and climbed out the back window.  The blows suffered by the children proved fatal but, miraculously, Mrs. Morgan survived.

Appellant fled to his own apartment, which was located in the same complex.  He locked and barricaded the apartment door and told his mother not to open it if the police should come.  Approximately one hour later, at 12:30 a. m. on February 15th, the police arrived.  With the assistance of two other persons, appellant further fortified the front door, forcing the police to break one of the panels in an effort to gain admittance.  Appellant then held the officers at bay by striking out at them with a large fork.  One of the policemen sprayed mace in appellant's direction, entered the apartment, and three policemen subdued appellant and placed him in handcuffs.  His mother was then advised that he was being taken to police headquarters and why.  She indicated that she would come to the station later, as there was no extra room in the police vehicle.

Following their arrival at police headquarters, appellant calmed down and the handcuffs were removed.  He was advised of his constitutional rights, after which, he indicated to the police that he did not wish to waive them without first seeing his probation officer, Claude Garry.  The police telephoned Mr. Garry who had just received a telephone call from appellant's mother.  Appellant's mother had informed Mr. Garry of what had happened, advised him that she was not going to police headquarters, and asked him to please go in her stead.

Mr. Garry, who had known appellant for approximately four years and counseled him and his mother on 25 to 30 occasions, arrived at approximately 1:40 a. m. and was taken to appellant.  In Mr. Garry's presence, appellant was again advised of his constitutional rights, with one officer reading from a card and another reiterating the warnings in very simplistic language.  Appellant agreed to waive these rights,

and Mr. Garry asked appellant if he knew why he was under arrest. Appellant immediately began to relate the foregoing incidents. When he was done, appellant indicated that he had no remorse, and stated he would repeat his acts, as the victim's children are happier now because they were mistreated and the victim was "no good" and deserved to die.

In a series of decisions beginning with *Commonwealth v. Roane*, 459 Pa. 389, 329 A.2d 286 (1974), a majority of this Court[2] has held that no person under 18 years of age may effectively waive his constitutional rights without: 1) an opportunity to consult with an adult, 2) who was interested in the welfare of the juvenile, and 3) who was aware of the rights of the accused. Appellant argues that Mr. Garry, his probation officer, was not the "interested adult" required by these decisions, and that the court below, therefore, erred in not suppressing his statements. The Commonwealth, on the other hand, asserts the court below correctly found that appellant's waiver of constitutional rights was knowing, intelligent, and voluntary, and that appellant's incriminating statements were not illegally obtained. While appellant's characterization of Mr. Garry may be correct,[3] I agree with the Commonwealth.

The rationale for this Court's *per se* rule regarding juvenile confessions was enunciated in *Commonwealth v. Smith*, 472 Pa. 492, 372 A.2d 797 (1977):

" . . . The new rule appreciates that the inexperience of the minor affects not only his or her ability to understand

---

**2.** Former Chief Justice Jones and then Justice Eagen and Justice Pomeroy, dissented in *Roane*, and continued to dissent from subsequent decisions which followed the rule laid down in *Roane*. More recently, *see Commonwealth v. Nelson*, 488 Pa. 148, 411 A.2d 740 (1980) (Opinion in Support of Reversal), this author, joined by then Chief Justice Eagen and Justice Flaherty, expressed disapproval of the rule.

**3.** *See, Commonwealth v. Thomas*, 486 Pa. 568, 406 A.2d 1037 (1979) (Eagen, C. J., Larsen, J., and Flaherty, J., dissenting) wherein it was held that a prison counselor was not an "interested adult" because his concern could not be equated with an attorney representing the juvenile. That rationale would also apply to the instant case.

the full implication and consequences of the predicament but also renders the judgment inadequate to assess the spectrum of considerations encompassed in the waiver decision. It was therefore reasoned that the impediment of immaturity can only be overcome where the record establishes that the youth had access to the advice of an attorney, parent, or other interested adult and that the consulted adult was informed as to the constitutional rights available to the minor and aware of the consequences that might follow the election to be made."
*Id.*, 472 Pa. at 498–99, 372 A.2d at 800 (footnotes and citations omitted).

and, also, in *Commonwealth v. Thomas*, 486 Pa. 568, 406 A.2d 1037 (1979):

" ... This Court's 'interested adult' cases rest upon a concern that juvenile immaturity may preclude self-protection from overbearing police interrogation. The rule intends that overbearance may be avoided by consultation, with individuals such as a 'lawyer, adult relative or friend,' who can provide a juvenile with 'the protection which his own immaturity could not.' "
*Id.*, 486 Pa. at 571, 406 A.2d at 1038 (footnotes and citations omitted).

The rule, as these passages explain, was thus designed to insure that constitutional protections would not be lost as a result of the innocence and inexperience of youth being taken advantage of by overbearing interrogation.

In the instant case, appellant was 13 months short of 18 years. He had experienced prior encounters with the law, had been detained in a juvenile facility at New Castle, and was on probation at the time of his arrest for the heinous crimes in question. Appellant was described as "street wise", was in the lower spectrum of the adult normal range of intellectual functioning, and at all times appeared to comprehend his rights. In fact, appellant demonstrated his understanding of the import and effect of those rights by exercising them, and refusing to speak to the police without the presence of Mr. Garry. He was then afforded the

opportunity to speak with Mr. Garry, and confessed to his crimes immediately and without interrogation.

These circumstances disclose that appellant is not the youthful inexperienced juvenile contemplated in *Roane* and its progeny, and that his waiver of constitutional rights was not brought about by overbearing interrogation. Appellant had previous first-hand experience with the criminal justice system and was no more (and probably much less) in need of the assistance of an "interested adult" than a criminal 18 years of age (i. e., 13 months older than appellant) who never had an encounter with the police. Also, appellant who had already exercised his constitutional rights and had an opportunity to reflect on the situation, expressly waived those rights and confessed without any police interrogation whatsoever. To apply the *per se* rule in this case would, therefore, not advance its purposes but, rather, would result in the senseless exclusion of reliable evidence, and needless repetition of a fair trial.

Consequently, rigid adherence to this *per se* rule would be overly paternalistic, unnecessarily protective, and would sacrifice too much of the interests of justice. I thus reject the *per se* rule in favor of a more flexible approach which will reflect a concern for the interests of society, as well as the rights of juvenile defendants. Accordingly, I find that the presence of an interested adult is not necessary in all cases for an effective waiver of constitutional protections by a person under 18 years of age. I hasten to point out, however, that a person's youth, inexperience, and comprehension of the situation, along with the conduct of the police, are factors to be weighed in determining whether under the totality of the circumstances there has been a knowing, intelligent, and voluntary waiver of constitutional rights.[4]

Turning now to the totality of the circumstances in this case, most of which have already been discussed, it should be noted that prior to waiving his rights and making his

4. There will, of course, be some circumstances under which the presence of an interested adult will still be a prerequisite to a knowing, intelligent, and voluntary waiver of constitutional rights.

statements, appellant was not physically abused; all of his requests were granted; he was not threatened or promised anything; he lodged no complaints; he behaved normally; and he was made fully aware of the reason he had been placed under arrest. While giving his statement, appellant related the incident well and clearly; never hesitated; answered all questions posed; and was cooperative, willing and responsive. These circumstances amply support the suppression court's conclusion that appellant's waiver was knowingly, intelligently, and voluntarily entered, and that conclusion should not therefore, be disturbed on appeal. *Commonwealth v. Johnson*, 467 Pa. 146, 152, 354 A.2d 886, 889 (1976).

The judgment of sentence should be affirmed.

FLAHERTY and KAUFFMAN, JJ., join in this opinion in support of affirmance.

## OPINION IN SUPPORT OF REVERSAL

ROBERTS, Justice.

Appellant John Veltre was deprived of an opportunity to consult with an interested adult in violation of the clear rule of this Court established in *Commonwealth v. Roane*, 459 Pa. 389, 329 A.2d 286 (1974), and consistently followed in *Commonwealth v. Starkes*, 461 Pa. 178, 335 A.2d 698 (1975); *Commonwealth v. McCutchen*, 463 Pa. 90, 343 A.2d 669, cert. denied, 424 U.S. 934, 96 S.Ct. 1147, 47 L.Ed.2d 341 (1975); *Commonwealth v. Smith*, 465 Pa. 310, 350 A.2d 410 (1976); *Commonwealth v. Chaney*, 465 Pa. 407, 350 A.2d 829 (1975); *Commonwealth v. Riggs*, 465 Pa. 208, 348 A.2d 429 (1975); *Commonwealth v. Webster*, 466 Pa. 314, 353 A.2d 372 (1975); *Commonwealth v. Stanton*, 466 Pa. 143, 351 A.2d 663 (1976); *Commonwealth v. Gaskins*, 471 Pa. 238, 369 A.2d 1285 (1977); *Commonwealth v. Lee*, 470 Pa. 401, 368 A.2d 690 (1977); *Commonwealth v. Hailey*, 470 Pa. 488, 368 A.2d 1261 (1977); *Commonwealth v. Smith*, 472 Pa. 492, 372 A.2d 797 (1977); *Commonwealth v. Graver*, 473 Pa. 473, 375 A.2d 339 (1977); *Commonwealth v. Jamison*, 474 Pa. 541, 379 A.2d 87 (1977); *Commonwealth v. Crenshaw*, 475 Pa. 106, 379 A.2d 1305

(1977); *Commonwealth v. Markle,* 475 Pa. 266, 380 A.2d 346 (1977); *Commonwealth v. McCloud,* 477 Pa. 204, 383 A.2d 894 (1978); *Commonwealth v. Walker,* 477 Pa. 370, 383 A.2d 1253 (1978); *Commonwealth v. Lawson,* 478 Pa. 200, 386 A.2d 509 (1978); *Commonwealth v. Barnes,* 482 Pa. 555, 394 A.2d 461 (1978); *Commonwealth v. Hackett,* 484 Pa. 43, 398 A.2d 651 (1979); *Commonwealth v. Wade,* 485 Pa. 453, 402 A.2d 1360 (1979), and *Commonwealth v. Thomas,* 486 Pa. 568, 406 A.2d 1037 (1979). Judgment of sentence, therefore, should be reversed and appellant should be granted a new trial.

Pennsylvania's settled interested adult rule reflects the jurisprudential wisdom of the observation that "[t]he quality of a nation's civilization can be largely measured by the methods it uses in the enforcement of its criminal laws." Schaefer, Federalism and State Criminal Procedure, 70 Harv.L.Rev. 1, 26 (1956), quoted in *Commonwealth v. Martin,* 466 Pa. 118, 351 A.2d 650 (1976). Thus remarkable is the recent effort of some members of this Court to dismantle the settled Pennsylvania interested adult rule. Indeed, the clear trend of other jurisdictions is in accord with our cases going back to 1974. Colorado, *People v. Maes,* 194 Colo. 235, 571 P.2d 305 (1977), Connecticut, Conn.Gen.Stat. § 17–66d (1975), Indiana, *Lewis v. State,* 259 Ind. 431, 288 N.E.2d 138 (1972), and *Garrett v. State,* 265 Ind. 63, 351 N.E.2d 30 (1976); Louisiana, *State v. Dino,* La., 359 So.2d 586, cert. denied, 439 U.S. 1047, 99 S.Ct. 722, 58 L.Ed.2d 706 (1978); Missouri, *In re K.W.B.,* 500 S.W.2d 275 (Mo.App.1973); Oklahoma, *J. T. P. v. State,* 544 P.2d 1270 (Okla.Cr.App.1975), and Texas, *In re J. E. B.,* 514 S.W.2d 948 (Tex.Civ.App.1974), follow the interested adult rule. Also in accord are respected commentators. According to Section 3.2 of the Institute of Judicial Administration—American Bar Association Juvenile Justice Standards, Police Handling of Juvenile Problems (1980), "Juveniles should not be permitted to waive constitutional rights on their own." Commentary on this section states:

"[J]uveniles should be entitled to greater safeguards than currently protect adults when they are questioned by police following an arrest.

(a) When a juvenile is arrested, taken into custody, or otherwise deprived of his or her liberty in a significant manner, the juvenile and a parent or guardian must be given *Miranda* warnings and any statement made before both are so informed is inadmissible in any subsequent proceeding.

(b) Following an arrest, a juvenile may be questioned only after conferring with counsel. All such questioning must take place in counsel's presence unless the right to counsel has been previously waived.

(c) The right to counsel may only be waived after the juvenile has conferred with counsel and this waiver must take place in counsel's presence."

To the same effect is Rule 25 of the Council of Judges of the National Council on Crime and Delinquency, Model Rules for Juvenile Courts (1969), which provides:

"No extrajudicial statement by the child to a peace officer or court officer shall be admitted into evidence unless it was made in the presence of the child's parent or guardian or counsel. No such statement shall be admitted into evidence unless the person offering the statement demonstrates to the satisfaction of the court that, before making the statement, the child and his parents were informed and intelligently comprehended that he need not make a statement, that any statement made might be used in a court proceeding, and that he had a right to consult with counsel before or during the making of a statement."

The recent effort of some members of this Court is even more remarkable in its utter failure to recognize that today's affirmance by an equally divided court and the resulting denial of relief violates equal protection. There is no majority of the Court for the abrogation of the Pennsylvania interested adult rule. Thus, despite the view of some members, the established rule remains. *See The Antelope*, 10 Wheat. 66, 126, 6 L.Ed. 268 (1825) and *Ohio ex rel. Eaton*

*v. Price,* 364 U.S. 263, 80 S.Ct. 1463, 4 L.Ed.2d 1708 (1960). Rationality compels that existing law be applied to appellant's case. As the United States District Court for the Western District of Pennsylvania recently concluded in granting a Pennsylvania prisoner relief from his inability to obtain an involuntary manslaughter instruction,

> "[i]f some defendants receive the benefit of such a jury instruction the Fourteenth Amendment mandates that all similarly situated defendants receive it."

*Bishop v. Mazurkiewicz,* 484 F.Supp. 871, 880 (W.D.Pa.1980). Thus appellant must receive the same new trial received by Roane, Starkes, McCutchen, Johnnie Smith, Chaney, Riggs, Webster, Stanton, Gaskins, Lee, Hailey, Barry Smith, Graver, Jamison, Crenshaw, Markle, McCloud, Walker, Lawson, Barnes, Hackett, Wade, and Thomas.

O'BRIEN, C. J., joins in this opinion in support of reversal.

## OPINION IN SUPPORT OF REVERSAL

NIX, Justice.

The Court appears to be unanimous in the view that this record does not reflect the type of effective waiver by a juvenile that has been required by our decisions. The issue in controversy is the appropriate response to the absence of such a showing. My disagreements with those members of the Court that subscribe to the views expressed in the Opinion in Support of Affirmance are: (a) that the Pennsylvania Rule relating to the waiver of a juvenile defendant is jurisprudentially and legally sound and (b) that its application in this case demonstrates the need for such a principle. Through the decisions flowing from *Commonwealth v. Roane,* 459 Pa. 389, 329 A.2d 286 (1974),[1] this Court has

---

1. *Commonwealth v. Starkes,* 461 Pa. 178, 335 A.2d 698 (1975); *Commonwealth v. McCutchen,* 463 Pa. 90, 343 A.2d 669 (1975); *Commonwealth v. Riggs,* 465 Pa. 208, 348 A.2d 429 (1975); *Commonwealth v. Smith,* 465 Pa. 310, 350 A.2d 410 (1976); *Commonwealth v. Chaney,* 465 Pa. 407, 350 A.2d 829 (1975); *Commonwealth v. Stanton,* 466 Pa. 143, 351 A.2d 663 (1976); *Commonwealth v. Webster,* 466 Pa. 314, 353 A.2d 372 (1976); *Commonwealth v. Lee,* 470 Pa. 401, 368 A.2d 690 (1977); *Commonwealth v. Hailey,* 470 Pa. 488, 368

developed a rule which mandates two requisite elements to be demonstrated before there can be a finding that the juvenile has effectively waived his right of counsel and his right against self incrimination accorded to him under the Pennsylvania Constitution.

> The two requisite elements of proof of such a waiver on the part of a minor defendant are a showing that, (1) the accused had access to the advice of an attorney, parent or interested adult before an effective waiver may be established, [citation omitted] and (2) that the consulted adult was informed as to the constitutional rights available to the minor.

*Commonwealth v. Hailey,* 470 Pa. 488, 511, 368 A.2d 1261, 1273 (1977).

*See also, Commonwealth v. McCutchen,* 463 Pa. 90, 92–93, 343 A.2d 669, 670, *cert. denied,* 424 U.S. 934, 96 S.Ct. 1147, 47 L.Ed.2d 341 (1975); *Commonwealth v. Starkes,* 461 Pa. 178, 188, 335 A.2d 698, 703 (1975); *Commonwealth v. Chaney,* 465. Pa. 407, 409, 350 A.2d 829, 830 (1975); *Commonwealth v. Lee,* 470 Pa. 401, 404, 368 A.2d 690, 691 (1977).

It must be emphasized that the characterization of this rule as a per se one is, in my judgment, a misnomer insofar as it may suggest that a juvenile cannot effectuate a valid waiver of these constitutional rights. There is no question that a juvenile may give a custodial statement which may subsequently be used against him at trial.[2] The Pennsylva-

A.2d 1261 (1977); *Commonwealth v. Gaskins,* 471 Pa. 238, 369 A.2d 1285 (1977); *Commonwealth v. Smith,* 472 Pa. 492, 372 A.2d 797 (1977); *Commonwealth v. Graver,* 473 Pa. 473, 375 A.2d 339 (1977); *Commonwealth v. Jamison,* 474 Pa. 541, 379 A.2d 87 (1977); *Commonwealth v. Crenshaw,* 475 Pa. 106, 379 A.2d 1305 (1977); *Commonwealth v. Markle,* 475 Pa. 266, 380 A.2d 346 (1977); *Commonwealth v. McCloud,* 477 Pa. 204, 383 A.2d 894 (1978); *Commonwealth v. Walker,* 477 Pa. 370, 383 A.2d 1253 (1978); *Commonwealth v. Lawson,* 478 Pa. 200, 386 A.2d 509 (1978); *Commonwealth v. Barnes,* 482 Pa. 555, 394 A.2d 461 (1978); *Commonwealth v. Hackett,* 484 Pa. 43, 398 A.2d 651 (1979); *Commonwealth v. Wade,* 485 Pa. 453, 402 A.2d 1360 (1979); *Commonwealth v. Thomas,* 486 Pa. 568, 406 A.2d 1037 (1979).

2. It must also be stressed that this rule does not preclude the introduction of a volunteered statement by a minor. The applicabili-

nia Rule was formulated to assure the knowing and voluntary character of the waiver. An explanation for the need of this additional protection where a juvenile is involved was succinctly set forth in those decisions formulating the rule.

The new rule appreciates the inexperience of the minor affects not only his or her ability to understand the full implication and consequences of the predicament but also renders the judgment inadequate to assess the spectrum of the considerations encompassed in the waiver decision. *Commonwealth v. Smith*, 472 Pa. 492, 498, 372 A.2d 797, 800 (1977).

*See also, Commonwealth v. Jamison*, 474 Pa. 541, 379 A.2d 87 (1977); *Commonwealth v. Crenshaw*, 475 Pa. 106, 107, 379 A.2d 1305 (1979); *Commonwealth v. Markle*, 475 Pa. 266, 270, 380 A.2d 346, 348 (1977); *Commonwealth v. McCloud*, 477 Pa. 204, 206, 383 A.2d 894, 895–6 (1978); *Commonwealth v. Barnes*, 482 Pa. 555, 394 A.2d 461 (1978); *Commonwealth v. Hackett*, 484 Pa. 43, 398 A.2d 651 (1979); *Commonwealth v. Wade*, 485 Pa. 453, 402 A.2d 1360 (1979); *Commonwealth v. Thomas*, 486 Pa. 568, 406 A.2d 1037 (1979).

The Opinion in Support of Affirmance challenges the validity of these considerations suggesting that the application of such a rule is unwarranted where the appellant is a "street-wise juvenile." I do not discount that such an argument may be persuasive, however, accepting its validity the record should establish that the juvenile in question was in fact "street-wise" and, therefore, not in need of the supportive help provided by the rule. Such was not the case here. In this case the record established that this 16 year old youngster was seriously retarded and suffering from mental illness. Additionally, he was also plagued by the physical malady of a substantial hearing defect which obviously contributed to his diminished capacity to acquire knowledge. Such a defect would necessarily be a significant impediment

ty of the rule is limited to custodial interrogation and nothing more. The rule therefore does not come into play to prohibit his immaturity from inadvertently disclosing his guilt but rather it affords him a minimal protection where he is confronted with the majesty of the state.

in his acquiring the skills the majority would seek to attribute to the "street-wise" juvenile offender. The record further disclosed that he had the comprehension of a second grade student. Consequently, the translation of his experience into future points of references were severely curtailed. Faced with these undisputed facts, it is hard for me to find the applicability of the argument that the protection afforded by the rule was unnecessary in this case.

It must be noted, although the Opinion in Support of Affirmance acknowledges Mr. Garry did not meet the role of an "interested and concerned adult," their reasons for so concluding are different from mine. The mere fact that Mr. Garry was a probation officer would not be sufficient, in my judgment, to hold that he could not perform the role of an interested, concerned adult. What is persuasive, to me is the fact that the record showed that Mr. Garry did in fact serve as an agent of the police in their interrogation as opposed to being an adviser and confidant to the juvenile. His role was further graphically clarified by the fact that he was an essential witness for the Commonwealth in its case against appellant.

I am aware that this was a heinous crime and that the offender must be punished. However, our law requires a fair adjudicative process regardless of the character of the crime. We do not seek victims. An injury is only vindicated when the one responsible is punished. It cannot be suggested that the reported statement was not a critical piece of evidence for the Commonwealth in its effort to establish the chain of guilt. As long as our Pennsylvania Constitution offers an accused a right to seek counsel and to remain silent in custodial situations, our courts are obliged to assure that these rights are fully understood by the person possessing them. It necessarily follows that this charge compels us to fashion reasonable rules which assure the requisite understanding that such a judgment requires. To do anything less would be to give lip service to an illusory right.

Accordingly, I must conclude the suppression court erred in ruling this testimony admissible and that the judgment of sentence should be reversed.