439 A.2d 1222

**In re Robert MILLER, Jr., a Minor.**

**Appeal of the COMMONWEALTH of Pennsylvania.**

**In re Curtis BUSH, a Minor.**

**Appeal of the COMMONWEALTH of Pennsylvania.**

Superior Court of Pennsylvania.

Argued Feb. 19, 1981.

Filed Jan. 8, 1982.

---

Michael E. Moyer, Assistant District Attorney, Allentown, for Commonwealth, appellant.

Paul A. McGinley, Allentown, for appellees.

Before PRICE, MONTEMURO and VAN der VOORT, JJ.

PER CURIAM:

This is a consolidated appeal by the Commonwealth from an order by the court below granting the appellees' motions to suppress certain inculpatory statements. On appeal, the Commonwealth makes several contentions of error by the court below in the granting of these motions. For the reasons discussed below, we do not agree and, accordingly, we affirm.

The essential facts of the case are as follows:

On November 4, 1979, Trooper Ralph Fiorenza of the Pennsylvania State Police was called to investigate an incident at 4315 Clearview Drive, Allentown, Pennsylvania. While there, the Trooper determined that an explosive had been placed in a mailbox at that address causing damage to the mailbox. The owner, Frederick Magruder, had chased the actor or actors and had suffered some ailment. (Mr. Magruder subsequently died as a result of a heart attack suffered during his chase.)

While conducting his investigation, Trooper Fiorenza talked to a Mark Verzino. Verzino told Trooper Fiorenza that he knew two boys, one named "Bushy," who had been talking about buying firecrackers at the bus stop earlier in the week. Verzino pointed out the two boys' respective houses, those being the residences of the two juveniles who are the appellees in the instant appeal.

Trooper Fiorenza went first to the Bush residence. The Trooper knocked on the door, was met by the elder Mr. Bush (father of the appellee herein), identified himself and was admitted into the house by Mr. Bush. The Trooper told Mr. Bush that a mailbox had been exploded; that the owner had chased the actor or actors; and that the owner had been stricken in some way as a result. The Trooper asked to talk to Curtis, which he did after the boy was summoned by his parents.

Curtis, his father, his mother, and Trooper Fiorenza were seated in the Bush living room. The Trooper told Curtis what had happened and asked Curtis if he knew anything about the incident. Curtis denied any knowledge.

Without giving *any* warnings concerning *Miranda*[1] rights to either Curtis or his parents, the Trooper proceeded to question the boy and elicit (admittedly with the help of the boy's father) an inculpatory statement and a forfeiture of the remaining supply of Curtis' fireworks.

1. *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

Trooper Fiorenza then went to the Miller residence. He approached the garage and saw appellee Robert Miller's father inside. Trooper Fiorenza was admitted to the garage, identified himself and explained the circumstances to him. Mr. Miller then hollered into the house and Robert came out. Mr. Miller told Trooper Fiorenza to tell Robert what had happened. Trooper Fiorenza again related the facts and Robert's father stated to Robert, "You're not involved in this, are you?" Robert told his father he was indeed involved. The father asked Robert if he had any firecrackers and told Robert to get the firecrackers. Robert returned with firecrackers and turned them over to Trooper Fiorenza. Trooper Fiorenza then left the Miller house.

At no point in either case were *Miranda* warnings given to the juveniles or their parents. At no point did Trooper Fiorenza know or tell the participants that Mr. Magruder had died. Although the only evidence Trooper Fiorenza had that Mr. Magruder had actually suffered a heart attack came from a Mrs. Gehran (who spoke to Trooper Fiorenza when he returned to the crime scene after talking with the juveniles), it is clear from the record that the Trooper was fully aware of the potentially serious nature of the charges, and yet failed to administer the appropriate warnings. Indeed, it was the finding of the court below that the actions of Trooper Fiorenza were sufficient to constitute "interrogation" in both cases, thereby triggering the need for *Miranda* warnings.

On March 7, 1980, petitions of delinquency were filed against Robert Miller, Jr., and Curtis Bush, charging them with criminal mischief,[2] conspiracy,[3] and involuntary manslaughter.[4] Both juveniles filed pre-trial motions seeking to suppress statements made by them. On April 21, 1980, the Honorable John E. Backenstoe of the Court of Common Pleas of Lehigh County, granted the juveniles' motions to

**2.** 18 Pa.C.S.A. § 3304(a), (b).

**3.** 18 Pa.C.S.A. § 903.

**4.** 18 Pa.C.S.A. § 2504.

suppress those statements, based on the above-mentioned finding of "interrogation" and on Pennsylvania's long-standing history of affording an extra measure of protection to juveniles under circumstances such as the instant action. This appeal followed.

On appeal, the appellant raises a number of minor contentions based on the facts of the case, and one major one, based on an apparent new trend in the law pertaining to the *Miranda* rights of juveniles. The essence of the factual, or factually-related, contentions of the Commonwealth is that the court below erred in its finding that an "interrogation" had taken place and that *Miranda* warnings were therefore required. Specifically, the Commonwealth contends that the court erred in its application of the guidelines concerning the need for *Miranda* warnings found in our holding in *Commonwealth v. Anderson*, 253 Pa.Super. 334, 385 A.2d 365 (1978) [5] in that the focus of the instant investigation was *not* sufficiently sharp here and, more importantly, that there was not a sufficient degree of deprivation of liberty of movement, real or perceived. Also, the Commonwealth seeks to avoid the necessity for *Miranda* warnings on the ground that it was the parents of the appellees, *not* Trooper Fiorenza, who conducted the questioning that led to the confessions.

■ After a careful review of the briefs, the record, and the cases cited by both sides, we must reject the factually-related contentions of the appellant. For one, a review of the record reveals conflicting testimony as to who actually

5.  In summary, these guidelines are:
    1.  police "focus" on a particular person will not require *Miranda* warnings before police interviews with that person.
    2.  actual police custody or restriction of freedom in any significant way prior to, or during, the interview requires that the person be advised of his *Miranda* rights.
    3.  a suspect actually may be in custody even if the police have not taken him to a police station or formally arrested him.
    4.  custodial interrogation occurs when a suspect is placed in a situation in which he reasonably believes that his freedom of action or movement is restricted by such interrogation.

conducted the questioning. It is our belief that the court below, as trier of fact, must have resolved this dispute in favor of the appellees in order to reach the result that it did. Certainly, the court did hold that Trooper Fiorenza made pointed and accusatory statements sufficient to warrant its holding that the interrogations were so custodial as to require warnings. The court even held that the trooper had threatened appellee Bush with a polygraph test, thereby implied by restricting his freedom. Surely such a finding would exclude placing the "blame" on the parents for their initial cooperation. Faced with lengthy and often conflicting testimony in this area, the court below found as it did on these factually-related points, and cannot be reversed absent clear error or abuse of discretion. We find no such error sufficient to reverse.

■  Appellant's most serious contention on appeal centers on its allegations that the law relevant to this type of case has changed and that, as a result, juveniles are no longer *absolutely* entitled to an extra measure of protection where *Miranda* rights are concerned. We must concede that there may generally be some merit to this contention. The possible change is very recent, however, and the matter is definitely not settled yet here in Pennsylvania. For that reason, and for the reason that the cases supporting appellant all deal with situations where at least *some* warnings were given (unlike the instant interrogations wherein *none* were given), we must reject appellant's contention in this area also.

As mentioned earlier, it has long been the law in Pennsylvania that "the circumstances surrounding a juvenile's confession must be examined with greater scrutiny than that of an adult," *Commonwealth v. Cobbs*, 452 Pa. 397, 404, 305 A.2d 25, 28 (1973). According to the *Cobbs* court, this extra measure of protection has been based largely on decisions of the United States Supreme Court dating back to 1948, including, of course, the landmark case of *In Re Gault*, 387

U.S. 1, 45, 87 S.Ct. 1428, 1453, 18 L.Ed.2d 527 (1967). During the 1970's numerous cases came down from our Supreme Court fleshing out the higher standard of care regarding juvenile confessions. See, e.g., *Commonwealth v. Smith*, 472 Pa. 492, 372 A.2d 797 (1977); *Commonwealth v. McCutchen*, 463 Pa. 90, 343 A.2d 669 (1975); *Commonwealth v. Starkes*, 461 Pa. 178, 335 A.2d 698 (1975); *Commonwealth v. Roane*, 459 Pa. 389, 329 A.2d 286 (1974). In 1978, the rights of juveniles in this area reached their high water mark in our Commonwealth in the case of *Commonwealth v. Barnes*, 482 Pa. 555, 394 A.2d 461 (1978). In *Barnes*, our Supreme Court reaffirmed the following prerequisites to a juvenile's waiver of his or her Fifth or Sixth Amendment rights:

1.  the juvenile must be given the opportunity to consult with an adult;

2.  the adult must be one who is genuinely interested in the welfare of the accused juvenile;

3.  the interested adult must be *informed and aware* of those Fifth and Sixth Amendment rights guaranteed to the juvenile;

*Commonwealth v. Barnes, supra,* 482 Pa. at 560, 394 A.2d at 464, citing *Commonwealth v. Smith, supra,* 472 Pa. at 500–02, 504, 372 A.2d 797 (Emphasis added). The court in *Barnes* added a fourth requirement that the mandatory consultation be a *meaningful* one, *Id.*; hence the reference to a "high water mark" in this area.

Clearly, the rule in *Barnes*, which is a *per se* one,[6] was not followed in the instant interrogation. No warnings whatsoever were given, much less an opportunity for consultation prior to the confession. The Commonwealth contends, however, that the standard announced in *Barnes* is no longer the law in this area, citing *Fare v. Michael C.*, 442 U.S. 707, 99

---

**6.** We would note at this point that we agree with Justice POMEROY in his dissent in *Barnes* that the *per se* rule goes too far. Nevertheless, *like the trial court below,* we are compelled to follow it as the law applicable here.

S.Ct. 2560, 61 L.Ed.2d 197 (1979) and its progeny. In *Fare*, the U.S. Supreme Court held that a minor's request for his probation officer was not a per se invocation of his *Miranda* rights and reversed a California court's decision to grant a motion to suppress. While this decision was based largely on the fact that a probation officer is ultimately a representative of the state, and not of the juvenile, it cannot be ignored that the *impact* of *Fare* is a major stepping-back in the long-standing federal basis for "juvenile" rights to consultation with an adult. Indeed, the U.S. Supreme Court recently vacated our holding in *Commonwealth v. Henderson*, 266 Pa.Super. 519, 405 A.2d 940 (1978) [stressing the juvenile's absolute right to consultation prior to waiver] with instructions to reconsider in light of *Fare*. *Commonwealth v. Henderson*, 446 U.S. 905, 100 S.Ct. 1829, 64 L.Ed.2d 256 (1980).

The Commonwealth relies heavily on these two decisions of the U.S. Supreme Court as indicating that the pendulum has swung back in this area of the law. While we must concede that this may well be the case,[7] we must also point out that an erosion of the right to consultation is *not* an erosion of the right of the accused juvenile to at least be informed of his *Miranda* rights. Nor is it necessarily an erosion of the rule calling for greater scrutiny of the circumstances of a juvenile's confession as opposed to those of an adult's. Quite simply, the instant case may be distinguished on the basis that *no* warnings were given regardless of any concomitant right to consultation with an interested adult. Furthermore, especially since juvenile law is a matter primarily of state concern, it may ultimately be held[8] that the

7. It is our understanding that our State Supreme Court has since granted allocatur on *Henderson*. It is our hope that on reconsideration, the right to consultation rule, which has been clouded by this recent vacating by the U.S. Supreme Court and by the recent split decision in *Commonwealth v. Veltre*, 492 Pa. 237, 424 A.2d 486 (1981) (discussed at Note 9 and accompanying text infra), will be made clear once again.

8. See Note 7 supra.

state law underpinnings (particularly those found in our State Constitution) of the per se right to meaningful consultation before waiver of *Miranda* rights are sufficient to keep it alive in Pennsylvania despite the decision in *Fare.* Hence, we would not agree that *Henderson* has been overruled.

Along these lines, there is a recent case, not cited by either side on appeal, which deserves comment. In *Commonwealth v. Veltre*, 492 Pa. 237, 424 A.2d 486 (1981), our Supreme Court, for the first and only time, retreated from the per se nature of our right to consultation rule.[9] This would seem to comport with the Commonwealth's position regarding a shift in the law, although *Veltre* also involved a situation wherein at least some basic warnings to the juvenile were given. The precedential value of *Veltre* is dubious, however, since it involved an evenly split court, and since it was in fact the first and only such departure (made primarily on the basis that the particular defendant was so "street-wise" and experienced with the law that he was capable of waiving his rights on his own). Furthermore, the opinion in *Veltre* clearly reaffirmed another principle of long-standing—that a judge's decision regarding an alleged waiver of a juvenile's *Miranda* rights be made with reference to the totality of the circumstances. Clearly, the court below in the instant action did properly consider the totality of the circumstances surrounding the subject interrogations and found due care for the juveniles' rights lacking.[10] We see no reason to reverse that finding.

For the reasons stated above, the Order of the court below granting the motions to suppress is hereby affirmed.

VAN der VOORT, J., notes his dissent.

**9.** See Footnote 7 supra.

**10.** We are hard-pressed to see how anyone, especially a juvenile, could knowingly and voluntarily waive rights of which he is not even made aware.