**Michelle Renee Lynn VARNER**

v.

**Brandon Glenn HOLLEY, Appellant.**

Superior Court of Pennsylvania.

Submitted Aug. 18, 2003.

Filed June 21, 2004.

Linda S. Hollilnger, Carlisle, for appellant.

Jaime M. Keating, Asst. Dist. Atty., Carlisle, for appellee.

Before: FORD ELLIOTT, BOWES, and TAMILIA, JJ.

FORD ELLIOTT, J.

¶ 1 Appellant, Brandon Glenn Holley, appeals from the December 6, 2002 order of the Court of Common Pleas of Cumber-

land County finding him in indirect criminal contempt after violating a Protection from Abuse Order ("PFA"). We reverse the order of the trial court.

¶ 2 On August 12, 2002, Michelle Renee Lynn Varner ("Varner") filed a petition pursuant to the Protection from Abuse Act ("the Act"), 23 Pa.C.S.A. § 6101 *et seq.,* alleging that appellant, her former boyfriend, harassed her and threatened to kill her current boyfriend. Both Varner and appellant were minors at the time the petition was filed. A temporary PFA order was entered, and a hearing was scheduled for August 15, 2002. Foregoing a hearing, Varner and appellant reached an agreement which was finalized by an order dated August 16, 2002.

¶ 3 Among other directives, the order specifically prohibited appellant from having "ANY CONTACT with [Varner] . . . at any location, including but not limited to any contact at [Varner's] school, business, or place of employment." (*See* Final Order of Court, 8/16/02 at 2.) The order specifically prohibited appellant from going to Varner's residence in Newville and from going near Saylor's Market, which was her place of employment. (*Id.*) Appellant, who was 17 at this time, was advised of his rights and agreed to sign a PFA without the assistance of counsel or any other interested adult. (*Id.* at 1.) Appellant's signature was witnessed by his juvenile probation officer, Michael Rose. (*Id.* at 4.)

¶ 4 Thereafter, on November 29, 2002, Varner alleged that appellant, then 18, violated the PFA. The Commonwealth petitioned the court for a hearing on the charges of indirect criminal contempt; a hearing was held on December 6, 2002. At the hearing before the Honorable George E. Hoffer, P.J., Varner testified that she had been working for Saylor's Market for approximately one year. She did not have a regular schedule, but worked a variety of shifts. (Notes of testimony, 12/6/02 at 4.) On November 29, 2002, she was working at one of the checkout counters; and at approximately 6:45 p.m., appellant entered the store.

¶ 5 Varner testified that appellant picked up items and then went through another checkout line to purchase them. While appellant did not directly approach Varner, he made direct eye contact with her and gave her "dirty looks." (*Id.* at 6.) Varner testified that she was afraid and placed a call to her mother. (*Id.* at 7.) When Varner left work, she reported the incident to Officer Randy L. Finkey of the Newville Police Department. (*Id.*)

¶ 6 Officer Finkey testified that he reviewed a copy of the PFA and took Varner's statement. (*Id.* at 10.) Later that same evening, Officer Finkey saw appellant outside the police station. The officer asked appellant to come into the station and subsequently read the PFA order to appellant. Appellant indicated that he was aware of the PFA and admitted to being in Saylor's Market. Appellant, however, told the officer that "someone . . . advised him that [Varner] no longer was employed at Saylor's Market." (*Id.* at 11.) Officer Finkey testified that appellant was not specific as to who told him that Varner no longer worked at the grocery store.

¶ 7 Following the hearing, Judge Hoffer found appellant in contempt and placed him on supervised probation for a period of six months. Appellant was also ordered to pay all costs associated with the proceedings and was directed to abide by the PFA order. (*Id.* at 12–18.) Appellant filed a timely appeal and, pursuant to the trial court's directive, filed a 1925(b) statement of matters complained of on appeal raising the following three issues for our review:

I. WERE [APPELLANT'S] PROCEDURAL DUE PROCESS RIGHTS VIOLATED BY THE ENTRY OF THE PFA ORDER WHERE [APPELLANT] WAS A JUVENILE AT THE TIME, UNREPRESENTED BY COUNSEL AND THE COURT ADOPTED THE CONSENT AGREEMENT WITHOUT A HEARING?

II. DID THE COMMONWEALTH FAIL TO PRESENT SUFFICIENT EVIDENCE OF [APPELLANT'S] GUILT FOR A CONVICTION TO STAND IN THIS CASE?

III. WAS THE [APPELLANT'S] ENTRY INTO THE SAYLOR'S MARKET IN VIOLATION OF THE PROTECTION FROM ABUSE ORDER A DE MINIMIS INFRACTION WHICH WARRANTED DISMISSAL OF THE PROSECUTION?

Appellant's brief at 5.

¶ 8 Appellant first challenges the legality of the original PFA order and asks this court to find it invalid. Although appellant was an adult at the time he violated the court order, he was a minor at the time the original allegations were brought; and therefore, he argues that he was entitled to counsel before a PFA order could be properly entered. (Appellant's brief at 9.) While we disagree with appellant that he had a right to court-appointed counsel, we do find that, as a juvenile respondent, he was entitled to an interested adult to defend on his behalf.

¶ 9 Our research reveals very little case law in Pennsylvania concerning mi-

nors named as respondents in PFA actions. Thus, we begin by clarifying that a juvenile can be named a respondent in a PFA action. While the Act does not expressly authorize a suit against a minor, there is nothing in the Act that suggests age is a factor to consider in the relationship between the victim and the offender. *See* 23 Pa.C.S.A. § 6102(a)(1)-(5). The Act delineates the "relationship requirements" of the parties: a defendant must be a family or household member, sexual or intimate partner, or person who shares biological parenthood. *Id.* A dating relationship, such as the relationship between appellant and Varner, meets the relationship requirement of the Act. *R.G. v. T.D.,* 448 Pa.Super. 525, 672 A.2d 341, 342 (1996) (evidence that parties were formerly "sexual or intimate" partners established necessary relationship under the Act).

¶ 10 Furthermore, we find to hold to the contrary would be inconsistent with Section 6114 of the Act and Section 6302 of the Juvenile Act; both sections refer to contempt for violation of a PFA order. *See* 23 Pa.C.S.A. § 6114; 42 Pa.C.S.A. § 6302. The plain reading of Section 6114 clearly indicates that a minor may be named a respondent to a petition for protection from abuse. Section 6114(a.2) provides specific terms of punishment for a minor contemptor in an indirect criminal contempt proceeding. *See also* Standard Pennsylvania Practice 2d, § 131:10, n. 58; Summary of Pennsylvania Jurisprudence 2d, § 12:44. A minor contemptor who has violated a PFA will be found to have committed a "delinquent act" under the Juvenile Act. 42 Pa.C.S.A. § 6302(1); *Diehl v. Drummond,* 2 Pa. D. & C.4th 376, 378–379 (1989)[1] (predating the amendment to

---

**1.** We recognize that a published decision of the Lycoming County Court of Common Pleas is not binding precedent; however, it may be

considered for its persuasive authority. *Commonwealth v. Phinn,* 761 A.2d 176, 179–180

§ 6302, holding that a juvenile can be named as a respondent in a PFA action and enforcement of such a PFA order must occur under the Juvenile Act).

¶ 11 While it is clear that a minor can be named a respondent in a PFA action and will be subject to the provisions of the Juvenile Act for violations, we must now examine what protections a juvenile is entitled to during the initial PFA proceedings, as the heart of appellant's argument is that he was unrepresented when the PFA order was entered.

¶ 12 The initial proceeding instituted pursuant to the Act is essentially civil in nature. 23 Pa.C.S.A. § 6107; *Snyder v. Snyder*, 427 Pa.Super. 494, 629 A.2d 977, 982 (1993).[2] Therefore, we look to the general rules set forth in the Pennsylvania Rules of Civil Procedure for guidance. According to the Rules of Civil Procedure, a "minor" is defined as an individual under the age of 18 years. Pa.R.Civ.P. 76 ("Definitions"), 42 Pa.C.S.A. The rules also provide that an action against a minor must be commenced in the same manner as one against an adult. Pa.R.Civ.P.2028, 42 Pa. C.S.A.

¶ 13 In regards to the right to counsel:
　Unlike cases arising under the Juvenile Act or cases concerning involuntary commitment, there is no legislatively created right to court-appointed counsel in [PFA] proceedings. Rather, the [PFA] only requires that the court ad-

vise a defendant of the right to be represented at the hearing by counsel. *See* 23 Pa.C.S.A. § 6107(a). The right to be represented by counsel cannot be equated with the right to receive court-appointed counsel. The right to be represented by counsel in civil proceedings is one accorded to all individuals. However, all civil litigants do not have the right to court-appointed counsel.

*Weir v. Weir*, 428 Pa.Super. 515, 631 A.2d 650, 657 (1993). The *Weir* court held that a PFA action is not the type of proceeding which involves the deprivation of a constitutional right so as to require the appointment of counsel. *Id.*

¶ 14 However, when a minor is a party to a civil action, the legislature has specifically provided that a "minor shall be represented by a guardian who shall supervise and control the conduct of the action in behalf of the minor." Pa.R.Civ.P.2027, 42 Pa.C.S.A. Additionally, the note to Rule 2028, which concerns minors named as defendants, explains that "subsequent appointment of a guardian to represent the minor is essential to the rendition of a valid judgment against the minor." *See* Explanatory Note following Pa.R.Civ.P. 2028.

¶ 15 Thus, we find that a juvenile named as a respondent in a PFA action must be represented by a guardian, which is de-

---

(Pa.Super.2000); *Turner v. May Corp.*, 285 Pa.Super. 241, 427 A.2d 203, 208 n. 7 (1981).

**2.** While we recognize that PFA actions are quasi-civil in nature, when a juvenile respondent is involved, such a matter would appear to be handled in the juvenile system in the first instance. The Juvenile Act was crafted to, among other purposes, provide treatment, rehabilitation, and reformation for minors. Our supreme court has observed that in creating the new Juvenile Act, "the legislature, in no uncertain terms, made it clear that when-

ever possible its provisions should control in resolving matters pertaining to juveniles." *Commonwealth v. Greiner*, 479 Pa. 364, 370, 388 A.2d 698, 701 (1978). For all the same reasons that a minor's violation of a PFA is handled by Juvenile Court, it would seem more effective for the initial PFA proceeding to occur there as well. However, because there is presently no statutory authority for initiating a PFA proceeding under the Juvenile Act, we leave consideration of this matter to the Legislature.

fined by the rules as a party representing the interest of a minor in the action,

> whether as (a) the guardian of a minor appointed by any court of competent jurisdiction, (b) a person in the nature of a next friend selected to represent a minor plaintiff in an action, or (c) a guardian ad litem specially appointed by the court in which the action is pending[.]

Pa.R.Civ.P.2026, 42 Pa.C.S.A. Therefore, we find that a juvenile must be afforded the opportunity to confer with and receive advice from a guardian.

¶ 16 Instantly, we find no record of whether appellant's parents or a guardian were present or even notified. Rather, appellant's probation officer appeared on his behalf. Therefore, the remaining issue is whether the probation officer would be an adult interested in the minor for purposes of giving the minor informed adult guidance with regard to his position as a respondent in a PFA action. We think not.

¶ 17 The probation officer is an officer appointed by the court. While the probation officer certainly should not be opposed to the interest of the minor, neither can he be the minor's advocate. *See c.f. Commonwealth v. Thomas*, 486 Pa. 568, 406 A.2d 1037 (1979) (Eagen, C.J., Larsen, J., and Flaherty, J., dissenting) (prison counselor was not an interested adult for purposes of juvenile waiving *Miranda* rights because his concern could not be equated with an attorney representing the juvenile); *Commonwealth v. Veltre*, 492 Pa. 237, 239–243, 424 A.2d 486, 487–488 (1980) (Opinion in Support of Affirmance by Larsen, J., joined by Flaherty and Kauffman, JJ.) (although probation officer was not an "interested adult, appellant's waiver was knowingly, understandingly, and voluntarily made under the totality of the circumstances."). The rationale of *Thomas* and *Veltre* would also apply to the instant case. The record reflects that the probation officer's concern cannot be equated with that of an attorney, professionally representing the juvenile's interest. Nor can a probation officer's concern be equated with that of a parent.

¶ 18 Pursuant to the above analysis, we agree with appellant that he cannot be found in indirect criminal contempt of an invalid PFA agreement. The original PFA order is voidable as he was a minor unrepresented by a guardian. *See* Pa. R.Civ.P.2026.

¶ 19 Because of our disposition of appellant's first issue, an analysis of appellant's second and third issues is unnecessary.

¶ 20 Criminal contempt order reversed. Jurisdiction relinquished.